Randy **GRIFFIN**, Plaintiff,

v.

**SECURITY PACIFIC AUTOMOTIVE FINANCIAL SERVICES CORPORATION**, Defendant.

No. Civ.A. 96–2275–GTV.

United States District Court, D. Kansas.

Nov. 18, 1998.

Tamatane Aga, Jr., Olathe, KS, for Randy Griffin, plaintiff.

Rex A. Sharp, Joseph P. Conran, Husch & Eppenberger, Kansas City, MO, for Security Pacific Credit Corp.

## MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

This diversity case arises out of the sale and repossession of a 1985 BMW 318i that plaintiff Randy Griffin leased and attempted to purchase. Plaintiff alleges that defendant failed to assign him title to the BMW in violation of K.S.A. 8–135(c) and that defendant committed deceptive acts and practices in violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50–623 *et seq.* Defendant counterclaims that plaintiff breached an actual or implied contract between the parties, converted the BMW, and was unjustly enriched through his use of the BMW. The case is before the court on defendant's motions for summary judgment (Docs. 107 & 109). For the reasons set forth, defendant's motions are denied.

### I. Factual Background

The following facts are either uncontroverted or based on evidence viewed in a light most favorable to the nonmoving party. Facts that are either immaterial or not properly supported by the record are omitted.

On May 9, 1985, plaintiff entered into a 48–month closed-end vehicle lease agreement with Dale Sharp, Inc. ("Sharp") of Topeka, Kansas for the BMW. Sharp assigned its interest in the lease to defendant Security Pacific Automotive Financial Services Corporation. At the inception of the lease, Sharp assigned the Certificate of Origin for the BMW to "Security Pacific Credit Corp. c/o Randy Griffin" at plaintiff's then-home address. On June 7, 1985, plaintiff signed a Title and Registration Application with the Kansas Department of Revenue reflecting defendant's status as legal title holder and plaintiff's status as lessee.

In February 1989, before the lease expired, defendant informed plaintiff that he had the option of entering into a second lease, buying the car for cash, or financing the purchase of the car through defendant. Plaintiff chose to purchase the car through an installment purchase contract.

When plaintiff's lease expired in May 1989, his loan application for the purchase of the car had yet to be processed. Plaintiff contacted defendant's loan department to determine an appropriate financial arrangement pending approval of his loan. Plaintiff claims that someone in defendant's loan department told him to continue making his normal monthly payments and that the payments would be credited toward the purchase of the car when his loan was approved. Plaintiff also claims that he was told to identify his checks with his former lease account number to make it easier to keep track of his accruing credits. Plaintiff did as instructed, making payments in May, June, July, and August of 1989. In September 1989, plaintiff received a letter from defendant indicating that he had failed to make certain lease payments

due under a second lease. Apparently, defendant had entered plaintiff into a new lease (called a holdover lease by defendant) when the BMW was not returned and approval of plaintiff's loan application was pending. When plaintiff contacted defendant in response to this new development, defendant assured him that his payments would be credited to the balance of the pending loan. Plaintiff then made a double payment in September 1989 and a final payment in November 1989.

On November 26, 1989, plaintiff entered into a thirty-six-month installment contract with defendant to purchase the BMW. The contract specified that it "SUPERSEDES ALL PREVIOUS CONTRACTS" and that "[a]ny changes to this contract must be in writing and signed by [Buyer] and Seller". During the term of the installment contract, the title certificate continued to show "Security Pacific Credit Corp. c/o Randy Griffin" as the owner of the vehicle. Defendant did not formally assign title of the BMW to plaintiff after the purchase contract was signed. When plaintiff inquired as to why the title was not assigned, defendant stated that, as a California bank, it was not required to comply with Kansas law. Plaintiff proceeded to make thirty-one payments under the contract, but intentionally failed to make the final five. He asserted that the five payments made in the interim period between the end of the first lease and the signing of the installment purchase contract should have been credited toward the vehicle purchase price under the installment contract. In April 1992, plaintiff called defendant and inquired about the status of his first five payments. He was told that those payments would be credited to his outstanding balance on the installment contract. The payments, however, were never credited.

In January 1993, defendant turned plaintiff's account over to Coast Professional Services ("Coast") for collection. On January 20, 1993, Coast sent a form collection letter indicating it had been assigned plaintiff's account by defendant. Coast made various written and telephone contacts with plaintiff, but failed to collect any money. In October 1993, defendant hired Global Collection Services ("Global") to collect plaintiff's outstanding debt. Plaintiff received various calls and letters from Global, but refused to make any more payments. Plaintiff continued to drive the BMW.

On June 27, 1994, defendant sent plaintiff a "notice of default and right to cure" letter. On July 28, 1994, the BMW was repossessed. The BMW was sold and the sale price was credited to plaintiff's alleged outstanding balance. Although the plaintiff's outstanding balance was no longer on defendant's books, collection efforts persisted. On July 21, 1995, defendant acknowledged that the debt was paid and that it had failed to notify the collection agency. Plaintiff brought this action on May 13, 1996.

In a memorandum and order dated February 17, 1998, the court held that, pursuant to K.S.A. 8–135, the installment contract between the parties was fraudulent and void due to defendant's failure to deliver title to the automobile. In an order dated June 24, 1998, the court dismissed plaintiff's conversion claim, Count XII, and interpreted plaintiff's breach of contract claim, Count XIII, to be a tort action seeking damages for the purchase price paid for the BMW and for plaintiff's expenses in replacing the vehicle after it was repossessed. Finally, the court ruled in its November 3, 1998 order that most of plaintiff's KCPA claims were barred by the statute of limitations of either K.S.A. 60–512(2) or K.S.A. 60–514(c). This ruling effectively dismissed Counts II, III, IV, V, VII, VIII, IX, and X of plaintiff's second amended complaint.

## II. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### III. Discussion

Plaintiff's second amended complaint contains thirteen counts—Counts I–XI allege KCPA violations, Count XII alleges conversion of the BMW, and Count XIII alleges a violation of K.S.A. 8–135. Through a motion to dismiss and multiple motions for summary judgment, the court has dismissed nine of plaintiff's counts. Only Counts I, VI, XI, and XIII remain before the court. In Counts I, VI, and XI, plaintiff claims that defendant committed deceptive acts and practices in violation of K.S.A. 50–626(b)(2) and (3). In Count XIII, plaintiff claims defendant violated K.S.A. 8–135 by failing to deliver title to the BMW. Defendant argues that the court should grant summary judgment on all remaining counts. Defendant also moves for summary judgment on its three counterclaims.

### A. Plaintiff's KCPA Claims (Counts I, VI, and XI)

A purpose of the KCPA is "to protect consumers from suppliers who commit deceptive and unconscionable practices...." K.S.A. 50–623. Plaintiff alleges that defendant engaged in deceptive practices in violation of K.S.A. 50–626(b)(2) and (3). K.S.A. 50–626 is violated when a supplier engages in a deceptive act or practice in connection with a consumer transaction. *See* K.S.A. 50–626(a). Defendant argues that summary judgment should be granted on some or all of plaintiff's KCPA claims on the following grounds:

1. Plaintiff is not a "consumer" and his claims did not stem from an "underlying consumer transaction;"

2. A void and illegal transaction under K.S.A. 8–135 bars recovery by either party;

3. A violation of K.S.A. 8–135 is not actionable under the KCPA;

4. Plaintiff cannot state a cause of action for improper debt collection practices under K.S.A. 50–626;

5. Defendant's conduct was not willful;

6. Plaintiff's KCPA claims are based on an alleged misrepresentation or omission of law, not of a material fact as required by K.S.A. 50–626(b);

7. Count XI fails to allege actual damages; therefore, plaintiff is barred from recovery under the KCPA; and

8. Plaintiff's prayer for relief in Count VI seeks an impermissible double recovery.

### 1. Are plaintiff's claims actionable under the KCPA?

Under the plain language of the KCPA, plaintiff's claims are actionable if plaintiff is a "consumer" and defendant, as a supplier, performed the allegedly deceptive acts in connection with a "consumer transaction." *See* K.S.A. 50–626(a). A "consumer" is defined by K.S.A. 50–624(b) as "an individual ... who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. 50–

624(c) provides that a consumer transaction is "a sale, a lease, assignment or other disposition for value of property or services within [Kansas] to a consumer; or a solicitation by a supplier with respect to any of these dispositions."

■ Defendant claims that plaintiff is not a consumer and that any alleged deceptive acts or practices were not performed in connection with a consumer transaction. Defendant first argues that because K.S.A. 8–135 rendered the installment contract fraudulent and void, plaintiff's attempt to purchase the BMW was not a consumer transaction. The court disagrees. Under K.S.A. 50–624(c), defendant's solicitation to sell the BMW constitutes a consumer transaction. Even though plaintiff did not owe defendant any money under the void installment contract, defendants alleged violations of 50–626(b) remain actionable under the plain language of the KCPA.

■ Defendant also argues that plaintiff is not a consumer as defined by the KCPA. The court again disagrees. Under K.S.A. 50–624(b), "a consumer is an individual who seeks or acquires property or services...." Plaintiff was a consumer when he sought to purchase the BMW from defendant. Indeed, it is because of his status as a consumer that defendant repeatedly attempted to collect on the void installment contract.

### 2. Does the void installment contract bar recovery?

■ Defendant argues that plaintiff may not use the void installment contract as the basis for recovery under the KCPA. The court agrees; however, defendant's assertion has no bearing on the plaintiff's claims. Plaintiff is not attempting to recover on the void installment contract. Rather, Counts I, VI, and XI are KCPA actions based on defendant's alleged deceptive acts in connection with plaintiff's attempt to purchase the BMW.

### 3. Is plaintiff attempting to bootstrap a violation of K.S.A. 8–135 in to a KCPA violation?

Defendant contends that the court should grant summary judgment on plaintiff's KCPA claims because a violation of K.S.A. 8–135 is not actionable under the KCPA. Defendant apparently misinterprets plaintiff's claims. Plaintiff is not alleging that defendant's failure to deliver title—a violation of K.S.A. 8–135—is a KCPA violation. Rather, in Counts I, VI, and XI, plaintiff claims that defendant violated the KCPA by making willful misrepresentations and omissions of material facts during the debt collection process.

### 4. Are plaintiff's KCPA claims properly brought under K.S.A. 50–626?

Defendant alleges that Counts I, VI, and XI complain of deceptive collection practices. Defendant contends that defendant's conduct is only actionable under K.S.A. 50–627, which governs claims of unconscionable debt collection practices. The court disagrees. Plaintiff alleges that defendant willfully misrepresented or omitted material facts, not that it conducted unconscionable debt collection practices. Therefore, plaintiff properly brought its KCPA claims under K.S.A. 50–626(b)(2) and (3).

### 5. Was defendant's conduct willful?

■ Defendant argues summary judgment should be granted because its actions were not willful as required by K.S.A. 50–626(b)(2) and (3). A supplier violates K.S.A. 50–626(b)(2) if it willfully uses exaggeration, falsehood, innuendo, or ambiguity as to a material fact. Similarly, a supplier violates K.S.A. 50–626(b)(3) if it willfully fails to state a material fact or willfully conceals, suppresses, or omits a material fact. Therefore, to be in violation of 50–626(b)(2) or (3), a supplier must commit the willful act of misrepresenting or omitting a material fact to a consumer. See York v. InTrust Bank, N.A., 265 Kan. 271, 291, 962 P.2d 405 (1998). Under Kansas law, a willful act is one "performed with a designed purpose or intent on the part of a person to do wrong or to cause injury to another...." Heckard v. Martin, 25 Kan. App.2d 162, 165, 958 P.2d 665 (1998) (quoting PIK Civ.3d 103.04).

Defendant contends that, even if all the alleged misrepresentations and omissions occurred, summary judgment is appropriate

because plaintiff has failed to provide any evidence that such actions were willful. The court disagrees. "Whether an act is a deceptive practice under K.S.A. 50–626 is a question of fact for the jury." *Farrell v. General Motors Corp.*, 249 Kan. 231, 243, 815 P.2d 538 (1991). From the record before it, the court cannot say, as a matter ·of law, that defendant's conduct was not willful. That issue is for the jury to decide.

### 6. Are plaintiff's KCPA claims based on alleged misrepresentations or omissions of fact?

Defendant argues that summary judgment must be granted on plaintiff's KCPA claims because they are based on an alleged misrepresentation or omission of law, not of fact. When viewing the record in a light most favorable to plaintiff, the court concludes that defendant's alleged misrepresentations and omissions concerned either questions of fact or mixed questions of law and fact. Accordingly, summary judgment is denied.

### 7. Does plaintiff's failure to allege actual damages in Count XI bar him from any recovery under the KCPA?

In *Finstad v. Washburn University of Topeka,* the Kansas Supreme Court held that a consumer who did not suffer actual damages as a result of an alleged KCPA violation is not "aggrieved" and, therefore, cannot bring an action under the KCPA to recover damages or civil penalties. 252 Kan. 465, 472, 845 P.2d 685 (1993). In Count XI, plaintiff seeks only civil penalties for defendant's KCPA violations occurring after May 13, 1995. Defendant argues that summary judgment should be granted as to Count XI because plaintiff did not specifically allege or seek actual damages in that count. The court disagrees. In Counts I and VI, plaintiff claimed that he suffered actual damages as a result of defendants alleged KCPA violations and, therefore, that he is "aggrieved" as required by K.S.A. 50–634. Because plaintiff has properly alleged that he is an aggrieved consumer, summary judgment is denied as to Count XI.

### 8. Does plaintiff's prayer for relief in Count VI seek an impermissible double recovery?

Defendant contends that the court should grant partial summary judgment as to Count VI because plaintiff's prayer for relief seeks an impermissible double recovery. In Count XI, plaintiff seeks damages equivalent to the value of the BMW and the cost of a substitute vehicle to replace the BMW after it was repossessed. Under Fed.R.Civ.P. 8(a), "[r]elief in the alternative or of several different types may be demanded." From the record presently before it, the court is unable to determine whether plaintiff's various requests for relief are inconsistent or duplicative. The court, therefore, concludes that summary judgment would be improper at this time. However, plaintiff may be required to make an. election of remedies before the case is submitted.

### B. Plaintiff's K.S.A. 8–135 Claim (Count XIII)

Defendant next argues that plaintiff's breach of contract claim, Count XIII, is moot because the installment contract is fraudulent and void. The court previously considered and rejected this argument. In Count XIII, plaintiff initially sought damages for defendant's alleged breach of the installment contract. However, in the court's June 24, 1998 order, the court interpreted Count XIII to be a claim seeking damages for defendant's violation of K.S.A. 8–135. Then, in an order ·dated November 3, 1998, the court determined that plaintiff's claim in Count XIII sounded in tort. Therefore, the validity of the installment contract is irrelevant to plaintiff's tort claim.

### C. Defendant's Counterclaims

Defendant also moves for summary judgment on its three counterclaims: (1) breach of contract; (2) conversion; and (3) unjust enrichment. Defendant sets forth multiple arguments in support of its counterclaims; however, the court will not address the merits of defendant's arguments. The record before the court is replete with questions of material fact precluding a grant of summary judgment.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motions for summary judgment (Docs. 107 & 109) are denied.

IT IS FURTHER ORDERED that defendant's motion to simplify the issues (Doc. 73) is denied as moot.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**