John F. TUFTS and Bobbie
J. Tufts, Plaintiffs,

v.

NEWMAR CORPORATION and Wilcox Homes and RV Center, Inc. Defendants.

No. Civ.A. 98–2265–KHV.

United States District Court,
D. Kansas.

May 27, 1999.

Donald E. Bucher, Robert E. Gould, Gould, Thompson, Carr & Bucher, P.C., Kansas City, MO, for plaintiffs.

Thomas M. Sutherland, Diane L. Waters, Holbrook, Heaven & Osborn, P.A., Kansas City, KS, for Newmar Corp., defendant.

David E. Bruns, Curtis J. Waugh, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Wilcox Homes and RV Center, Inc.

**1174**

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on the *Motion For Summary Judgment* (Doc. #50) filed January 27, 1999 by Wilcox Homes and RV Center, Inc. ("Wilcox") and the *Motion For Summary Judgment* (Doc. #47) filed January 27, 1999 by Newmar Corporation ("Newmar"). Plaintiffs bring this action under the Kansas Consumer Protection Act, K.S.A. § 50–623 et seq. For the reasons stated below, the Court sustains the motion by Wilcox and denies the motion by Newmar.

### Facts

Newmar Corporation manufactures and sells recreational vehicles (RV's). Wilcox Homes and RV Center, Inc. is an RV dealer. Prior to purchasing their RV from Wilcox, plaintiffs had owned a 35–foot long 1977 Kings Highway motor home and a 34–foot 1988 Titan RV. Plaintiffs became interested in purchasing a Newmar Dutch Star RV ("RV") after a friend purchased one. Plaintiffs were only interested in an RV manufactured by Newmar. Before they went to the Wilcox sales lot, John Tufts did specific research regarding the Chevy Vortex engine which he wanted in his Newmar RV, and plaintiffs decided that they wanted to look for "a Newmar with a 454 Vortex, Chevrolet chassis."

Plaintiffs went to the Wilcox lot in Topeka, Kansas, on Easter weekend of 1996. Tufts told Don Christman, president of Wilcox, that he wanted a Newmar RV with a 454 Chevy Vortex engine and chassis.[1] Christman gave plaintiffs literature about the Newmar RV.

The literature listed weight information for the RV with a 454 Chevy Vortex engine and chassis, including the gross vehicle weight rating ("GVWR"), gross combined weight, and unloaded vehicle weight ("UVW"). The literature listed a gross vehicle weight rating of 16,500 pounds and an unloaded vehicle weight of 13,634 pounds. It is unsafe to operate a recreational vehicle with a weight in excess of its gross vehicle weight rating. Based on the literature, the RV would have a net carrying capacity ("NCC") of 2,866 pounds, by subtracting the UVW from the GVWR.[2,3] Neither Wilcox nor Newmar advised plaintiffs that the unloaded vehicle weight, as listed in the sales brochure, did not include the weight of fuel, water, accessories and LP gas. Tufts' deposition testimony, however, shows that he believed that the UVW did not include any of these items. By industry standards, UVW includes a full fuel tank. Plaintiffs' RV has

---

1. Plaintiffs attempt to controvert this allegation by stating that Wilcox informed Tufts that the Newmar RV was available with a Ford, Chevrolet, or diesel engine and that Tufts merely stated that he preferred the Chevrolet engine. The Court finds defendant's allegation to be uncontroverted. First, the distinction between "want" and "prefer" is vague at best. Second, to the extent that the distinction is relevant, plaintiffs fail to indicate what evidence supports their allegation, and they therefore fail to comply with D.Kan. Rule 56.1. Third, Wilcox provides Tufts' deposition, where he states that "I said I don't want a Ford, I want a Chevrolet, I heard too many good things about the Chevrolet Vortex and that's what I wanted." *Deposition of Tufts*, (attached as Ex. A to Wilcox's *Motion*) at p. 42. Defense counsel used the term "prefer;" Tufts stated that he "wanted" the Chevy engine and chassis. *Id.* at 42–43.

2. Newmar alleges that the information contained in the brochure is correct, but it cites only plaintiff's deposition and the brochure itself for this allegation. Unfortunately for Newmar, neither of these sources state that the information in the brochure is correct. John Tuft's deposition testimony merely states that he received the brochure and generally understood its terms

3. Newmar alleges that by demanding a Chevy motor and chassis, plaintiffs caused the weight capacity of the RV to be reduced by 500 pounds. As plaintiffs note, this claim is incorrect. While the Ford RV had an additional 500 pounds GVWR, it also weighed 500 pounds more than the Chevy RV. Both the Ford and Chevy versions had the exact same carrying capacity—2,866 pounds.

an 80 gallon fuel tank which holds 448 pounds of gasoline when full.[4]

On April 6, 1996, plaintiffs ordered the RV. Tufts testified that "I ordered the Chevrolet chassis that comes with the 454 Vortex and that's what I ordered and that's what I wanted and that's what Newmar built me." Newmar delivered the RV to Wilcox in June of 1996. Before they bought the RV, plaintiffs spoke to only Don Christman. At his deposition, Tufts testified that he did not discuss with anyone at Wilcox the weight of the RV or its weight-carrying capacity. Prior to ordering the RV, plaintiffs did not have any discussions with any representative of Newmar. Prior to delivery, plaintiffs spoke with Newmar representatives only about the model number, serial number, and delivery date.

The RV's certificate of origin reflects a shipping weight of 14,700 pounds.[5] Christman advised plaintiffs that the RV would have a net carrying capacity of 1,800 pounds, after subtracting the shipping weight from the GVWR of 16,500 pounds. After receiving the RV, plaintiffs added various accessories to it.

Tufts has been a "professional driver" operating 18–wheelers since 1960. Because of this background, he was familiar with the terms "gross vehicle weight rating," "unloaded vehicle weight," and gross combined vehicle weight rating." Tufts understood how to use this weight information to determine approximately how much weight could be safely loaded on the vehicle.[6] Tufts also testified that he read literature about the RV's fuel capacity.

On December 16, 1998, the parties weighed plaintiffs' RV. At that time, the RV had a gross vehicle weight of 17,280 pounds with a full tank of gas (448 pounds), a full tank of water (373 ½ pounds),[7] half a tank of LP gas (50 pounds), all accessories added after delivery (307 pounds),[8] personal contents (379 pounds),[9] and two people (180 pounds and

4. Plaintiffs produce a chart which lists the weight of gasoline at 5.6 pounds per gallon. Newmar disputes plaintiffs' allegation by citing Tufts' deposition, where he states that "gasoline is, I believe, 9 pounds per gallon." To the extent that Tufts' belief is sufficient to raise a controverted fact, this only helps plaintiffs show exactly what they need to survive summary judgment—genuine issues of material fact.

5. Newmar alleges that plaintiffs' RV had a shipping weight of 14,700 pounds due to accessories which Newmar installed at plaintiffs' request. Newmar does not cite any evidence which supports this allegation. Newmar cites only Tufts' deposition, where he acknowledges a shipping weight of 14,700 pounds. This evidence fails to establish either (1) that the accessories plaintiffs desired caused the shipping weight to be 14,700 pounds, or (2) that the shipping weight of 14,700, as provided by Newmar, was correct.

6. Plaintiffs dispute this, alleging that Tufts' deposition answer indicates that he does not know how to calculate the "net carrying capacity." Tufts' answer states that he was able to calculate the amount which could be safely loaded—i.e., the net carrying capacity.

7. 45 gallons × 8.3 pounds per gallon.

8. Newmar alleges that these accessories weighed 410 pounds, and cites Tufts' deposition for support. Plaintiff, however, assert that Tufts' deposition testimony was an approximation. Newmar provides his affidavit, which states that Tufts found the actual weight of each accessory listed in the catalog from which plaintiffs ordered the accessories. After adding up the listed weights, Tufts states that the accessories actually weigh 307 pounds. Viewing the evidence in the light most favorable to plaintiffs, the Court must assume for purposes of this motion that plaintiffs' accessories weigh 307 pounds. In the end, the Court fails to see any meaningful distinction between 307 pounds and 410 pounds. The evidence establishes that plaintiffs believed that the RV would have 2,866 pound net carrying capacity, and then an 1,800 pound net carrying capacity. Even adopting Newmar's 410 pounds, the RV still only has a net carrying capacity of 722.5 pounds given its current weight.

9. With the following statement, Newmar challenges plaintiffs' allegation that plaintiffs' personal items weighed 379 pounds:

It is not possible to determine from plaintiffs' factual contention what contents plaintiff is categorizing as "personal belongings." It is likely that plaintiff is not including all non-attached items, such as

110 pounds).[10] The unloaded vehicle weight was 15,880.5 pounds (including only a full tank of gas). Plaintiffs' RV therefore has a net carrying capacity of 619.5 pounds (16,500 pounds (GVWR) minus 15,880.5 pounds (UVW)).

The purchase contract between plaintiffs and Wilcox states as follows:

> Exclusions of Warranties. I understand that the implied warranties of merchantability and fitness for a particular purpose and all other warranties expressed or implied are excluded by you from this transaction and shall not apply to the goods sold. I understand that you make no warranties whatsoever regarding the unit or any appliance or component contained therein, except as may be required under applicable state law.

Wilcox delivered the Newmar corporate warranty to plaintiffs, which includes the following:

> Any implied warranties as to the Newmar Corporation recreational vehicle including any warranty of merchantability or fitness for a particular purpose are limited to a period of twelve (12) months immediately following the date of purchase as heretofore stipulated. Some states do not allow limitations on how long an implied warranty lasts, so the above limitations may not apply to you.

Plaintiffs have not had any accidents in their RV. At the time of Tufts' deposition on January 13, 1999, plaintiffs had driven their RV over 12,000 miles.

Plaintiffs claim that defendants committed deceptive acts and practices under K.S.A. § 50–626 by making material misrepresentations and omissions regarding the weight of the RV and its net carrying capacity. Wilcox argues that it is entitled to summary judgment because it lacked the necessary intent to deceive. Newmar argues that it is entitled to summary judgment because plaintiffs have failed to show any misrepresentations or omissions. Newmar also argues that plaintiffs did not rely on any misrepresentations or omissions.

Plaintiffs also claim that defendants committed unconscionable acts under K.S.A. § 50–627 by attempting to limit the implied warranties of merchantability and fitness for a particular purpose. Both defendants argue that they did not attempt to limit the implied warranties. Plaintiffs also claim that Newmar's conduct regarding the weight of the RV and its carrying capacity was also unconscionable.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material"

---

equipment, in this figure. Additionally, the deposition testimony of Donald I. Christman indicates that plaintiff had some considerably heavy personal items on the RV during the weigh-in. Plaintiffs provide admissible evidence, in affidavit form, stating the weight of their personal belongings. Newmar produces no evidence to dispute plaintiff's evidence, but merely argues that it is likely incorrect. Newmar's challenge is insufficient to defeat plaintiffs' allegation. In any event, the record reveals a factual dispute, and the Court must view the evidence in the light most favorable to plaintiffs.

10. Newmar challenges plaintiffs' allegation that the RV weighed 17,280 with two persons in it, citing Christman's deposition testimony that three persons were in the vehicle when the parties weighed it. Viewing the evidence in the light most favorable to plaintiff, plaintiff provides Tufts' affidavit, which states that only two persons were in the RV. The Court accepts plaintiffs' computations. At any rate, any discrepancies again show existing issues of material fact regarding the weight of the RV.

only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505. The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## Analysis

### A. Deceptive Acts and Practices

■ The Kansas Consumer Protection Act was enacted in 1973 in part "to protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50–623(b). In order to promote this policy, the "KCPA is to be construed liberally." *Finstad v. Washburn Univ.,* 252 Kan. 465, 468, 845 P.2d 685, 688 (1993) (citing *Willman v. Ewen,* 230 Kan. 262, 267, 634 P.2d 1061 (1981); *Stair v. Gaylord,* 232 Kan. 765, 775, 659 P.2d 178 (1983)).

■ Plaintiffs claim that defendants deceived them about the RV's carrying capacity, which is significantly less than what defendants represented. Defendants argue that plaintiffs cannot show that defendants deceived them. Under K.S.A. § 50–626(a), defendants are prohibited from "engag[ing] in any deceptive act or practice in connection with a consumer transaction." Section 626(a) prohibits deceptive acts and practices generally while section 626(b) identifies specific acts or practices which are considered "deceptive" per se. *See id.; Rachoza v. Gallas & Schultz,* 1998 WL 171280 at *7 (D.Kan. Mar 23, 1998). "Whether an act is a deceptive practice under K.S.A. 50–626 is a question of fact for the jury." *Farrell v. General Motors Corp.,* 249 Kan. 231, 243, 815 P.2d 538, 547 (1991). Summary judgment is appropriate, however, if there is no evidence of deceptive conduct. *See Gonzales v. Associates Fin. Serv. Co. of Kan., Inc.,* 266 Kan. 141, 967 P.2d 312, 328 (1998).

■ Plaintiffs' complaint alleges that defendants violated K.S.A. § 50–626(b)(1)(A), (b)(1)(D), (b)(2), and (b)(3).[11]

---

11. K.S.A. § 50–626(b) provides that:
 Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consume has in fact been misled:
 (1) Representations made knowingly or with reason to know that:

To state a claim, therefore, plaintiffs must show that defendants' conduct was either "made knowingly or with reason to know," see K.S.A. § 50–626(b)(1)(A), (D), or "willful[ly]," under K.S.A. § 50–626(b)(2) and (3). Under Kansas law, a willful act is one " 'performed with a designed purpose or intent on the part of a person to do wrong or to cause injury to another. . . .' " *Griffin v. Security Pac. Automotive Fin. Servs. Corp.*, 33 F.Supp.2d 926 (D.Kan.1998) (citing *Heckard v. Martin,* 25 Kan.App.2d 162, 165, 958 P.2d 665 (1998) (quoting PIK Civ.3d 103.04)).

### 1. Wilcox

 Plaintiffs allege that Wilcox misrepresented the unloaded vehicle weight and the net carrying capacity of the vehicle. Wilcox provided plaintiffs literature about the Newmar RV, listing the UVW as 13,634 pounds and creating a NCC of 2,866 pounds. As Wilcox notes, "[t]here is absolutely no evidence in the discovery record that ... Wilcox knew or should have known that anything in the Newmar literature was inaccurate." Doc. # 50 at 11. Plaintiffs attempt to create a factual dispute by alleging that Wilcox did not inform plaintiffs that the literature was "from Newmar." ·Assuming that plaintiffs' allegation is true, it is irrelevant. To the extent that plaintiffs are attempting to allege that Wilcox prepared the literature, no reasonable jury could find that Wilcox produced the literature in question. The

> (A) property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have.
>
> \* \* \* \* \* \*
>
> (D) property or services are of particular standard, grade, style or model, if they are of another which differs materially from the representation.

literature clearly appears to be promotional material prepared by Newmar—it repeatedly mentions Newmar's name, includes Newmar's address on the last page, and does not mention products by any other RV manufacturer. *See* Ex. B (attached to Doc. # 50). Instead of mentioning Wilcox, the literature uses the generic term "dealer" repeatedly. *See id.* Alternatively, if plaintiffs are attempting to allege that Wilcox is liable for not disclosing the fact that Newmar prepared the literature, and not Wilcox, plaintiffs' argument again fails. To recover for nondisclosure under K.S.A. § 50–626(b)(3), plaintiffs must show that the undisclosed fact is material. A material fact is "one to which a reasonable person would attach importance in determining his or her choice of action in the transaction involved." *York v. InTrust Bank, N.A.,* 265 Kan. 271, 290, 962 P.2d 405, 420 (1998). Plaintiffs' true complaint lies with the information contained in the literature, not who produced it. No reasonable jury could find that the fact that Newmar created the promotional literature instead of Wilcox was material to plaintiffs' decision to purchase the RV.

Plaintiffs provide no evidence that creates even an inference that Wilcox knew that the weight information in the literature was incorrect. Plaintiffs also provide no evidence from which a reasonable jury could conclude that Wilcox *should have known* that the information was incorrect.

> \* \* \* \* \* \*
>
> (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact.
>
> \* \* \* \* \* \*
>
> (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact.

Therefore, plaintiffs are also unable to show that Wilcox willfully made a false statement when it gave the literature to plaintiffs.

◼ Plaintiffs attempt to meet the intent requirement by alleging that Wilcox intentionally gave the literature to plaintiffs, and that this information later proved false. While this allegation may be true, it misses the point. Under the statute, plaintiffs bear the burden of showing either (1) that Wilcox willfully gave false information or (2) that Wilcox knew or should have known that the representations it made, by providing the information, were false. It is not sufficient to allege that Wilcox willfully gave information that later proved to be false. To show willful conduct, plaintiffs must provide some indication that would allow a reasonable jury to conclude that Wilcox had a designed purpose to do wrong—i.e., that Wilcox intended to give the information even though Wilcox knew that it was false. Plaintiffs fail to create a genuine issue of material fact regarding whether Wilcox knew or should have known that the information was false, or whether Wilcox willfully provided false information.

◼ Plaintiffs also allege that Wilcox is liable for misrepresentations about the net carrying capacity after it received the RV certificate of origin. The certificate lists a shipping weight of 14,700 pounds, and Wilcox therefore informed plaintiffs that the NCC was 1800 pounds. The record reflects that Wilcox calculated the NCC by subtracting the shipping weight, which Newmar provided, from the GVWR of 16,500 pounds, which Newmar provided. Plaintiffs allege that this information was false. Again, however, plaintiffs provide no evidence to suggest that Wilcox either acted willfully or that Wilcox knew or should have known that its representation was false. Wilcox based its representation of net carrying capacity on the RV shipping weight. As with the promotional literature, no reasonable jury could find that Wilcox created the certificate of origin.

The document is a form from Newmar, signed by Newmar's chairman of the board. While Wilcox's name is on the certificate, it is listed as the dealer. *See* Ex. 1, (attached to plaintiffs' *Response* (Doc. # 61). The record contains no evidence that Wilcox was responsible for determining the shipping weight or that it had reason to question the shipping weight. At best the evidence shows that Wilcox simply relied upon the shipping weight listed on the certificate of origin. Without some evidence which would allow a reasonable jury to find that Wilcox knew or should have known that the shipping weight was wrong, plaintiffs fail to create a genuine issue of material fact whether Wilcox either (1) willfully misrepresented the NCC as 1,800 pounds or (2) knew or should have known that its NCC calculation was incorrect. Wilcox is therefore entitled to summary judgment on plaintiffs' claim that Wilcox used deceptive acts or practices.

**2. Newmar**

◼ Newmar argues that it did not make any false representations or omissions which would qualify as deceptive acts or practices. Plaintiffs allege that Newmar provided a brochure from which plaintiffs calculated a net carrying capacity of 2,866 pounds. Newmar argues that "there is no allegation, testimony or evidence that the brochure included false or misleading information." The Court, however, is of the exact opposite view—plaintiff alleges and provides evidence that the information in the Newmar brochure is incorrect based on the current net carrying capacity of the RV. The brochure lists a UVW of 13,634 pounds, while plaintiffs provide evidence that the current UVW of the RV is 15,880.5 pounds. Although Newmar installed various accessories on plaintiffs' behalf prior to delivery, the record reveals no evidence what the accessories were or how much they weighed. Given the current record, the Court cannot determine the accuracy of the brochure's statements.

The record therefore reveals genuine issues of material fact regarding the accuracy of the representations made in the brochure.

Newmar also ignores its representation that the RV shipping weight was 14,700 pounds, which would allow a net carrying capacity of 1,800 pounds. Plaintiffs, however, provide evidence that the actual UVW of the RV is not 14,700 pounds but 15,880.5 pounds. The RV therefore has a net carrying capacity of only 619.5 pounds, even after excluding all weights except a full gasoline tank. The evidence therefore discloses at least a genuine issue of material fact regarding the accuracy of Newmar's representation that the RV had a shipping weight of 14,700 pounds.

The simple fact is that somehow plaintiffs' RV appears to have continually gained weight from the brochure weight to the shipping weight to the current weight. Newmar argues that the weight gain is due to the accessories which plaintiffs added, but Newmar cites no evidence to support its argument. The only record evidence regarding the weight of accessories is that provided by plaintiffs. Not surprisingly, that evidence does not account for the vast discrepancies in the UVW which Newmar provided and the actual UVW of plaintiffs' RV.

Newmar argues that plaintiffs did not rely on its representations because they already knew what kind of RV they wanted. *See Finstad,* 252 Kan. at 474, 845 P.2d at 692 (1993). While the record is clear that Tufts was extremely interested in the Chevy motor and chassis for his RV, nothing in the record indicates that plaintiffs did not know about or did not rely on the Newmar information. *See id.* (plaintiffs did not see deceptive statement, and therefore could not have relied upon it). The evidence does not suggest that plaintiffs would have purchased the RV even if they knew that the RV would have the extremely limited carrying capacity which it now has. Newmar suggests that plaintiffs would have purchased the Chevy motor and RV at any cost, regardless of any problems with the vehicle. The record simply does not support such an extreme position, even considering plaintiffs' expressions of interest in the Chevy RV. A reasonable jury could easily find that plaintiffs relied on the representations which Newmar provided when deciding to purchase the RV and that plaintiffs would not have purchased the Chevy motor and chassis if they were aware of its limited carrying capacity.

In its reply, Newmar argues that plaintiffs fail to show that its representations were willful or that Newmar knew or should have known that the weights it provided were wrong. *See* Doc. # 69 at 10–11. Because Newmar did not raise this issue in the original motion, the Court does not address this argument. *See Medina v. City of Osawatomie,* 992 F.Supp. 1269, 1272–73 (D.Kan.1998) (court will not consider issues first raised in reply briefs). Even if the Court considers the issue, however, Newmar is not entitled to summary judgment. Newmar is responsible for the weights listed in both the brochure and the certificate of origin. A reasonable jury could find that at the very least, Newmar should have known that the weights were wrong. *See* K.S.A. § 50–626(b)(1)(A), (D). Given the discrepancy between the weights plaintiffs provide and the weights represented by Newmar, a reasonable jury could also conclude that the incorrect weight was so far off as to be a willful misrepresentation instead of a mere mistake. *See* K.S.A. § 50–626(b)(2), (3). Newmar is not entitled to summary judgment on plaintiffs' deceptive acts claim.

## B. Unconscionable Acts & Practices

### 1. Attempt to Limit Implied Warranties

Plaintiffs allege that defendants committed unconscionable acts by attempting to limit the implied warranties of merchantability and fitness for a particular purpose. Determining whether defen-

dants' conduct is unconscionable is a question for the Court. K.S.A. § 50–627(b). Section 50–627(b) sets forth numerous factors and types of conduct for the Court to consider in determining unconscionability. Plaintiffs argue that defendants acted in violation of Section 50–627(b)(7), which provides that an unconscionable act can include instances when:

> ... the supplier excluded, modified or otherwise attempted to limit either the implied warranties of merchantability and fitness for a particular purpose or any remedy provided by law for a breach of those warranties.

Plaintiffs' purchase contract with Wilcox included the following clause:

> Exclusions of Warranties. I understand that the implied warranties of merchantability and fitness for a particular purpose and all other warranties expressed or implied are excluded by you from this transaction and shall not apply to the goods sold. I understand that you make no warranties whatsoever regarding the unit or any appliance or component contained therein, except as may be required under applicable state law.

Newmar's corporate warranty to plaintiffs includes the following:

> Any implied warranties as to the Newmar Corporation recreational vehicle including any warranty of merchantability or fitness for a particular purpose are limited to a period of twelve (12) months immediately following the date of purchase as heretofore stipulated. Some states do not allow limitations on how long an implied warranty lasts, so the above limitations may not apply to you.

Plaintiffs assert that both provisions are attempts to exclude warranties. The Court disagrees. Under the express terms of the contracts, both defendants

recognize that they are subject to whatever warranties Kansas law may require. Kansas voids any contract clause that disclaims or limits the implied warranties of merchantability and fitness for a particular purpose. K.S.A. § 50–639(e). Kansas law therefore requires these warranties unless the consumer has knowledge of the defects in the product. See K.S.A. § 50–639(c). The purchase contract only disclaims whatever warranties defendants can disclaim under Kansas law. While the contracts attempt to limit implied warranties when possible, both contracts recognize that these limits are not possible in some states and do not attempt to limit them in those states. Under the terms of the contracts, neither defendant attempts to limit implied warranties in Kansas.

■ Language that eliminates a disclaimer of implied warranties prevents the disclaimer from applying, and therefore prevents a claim of unconscionability under Section 50–627(b)(7). See AgriStor Leasing v. Meuli, 634 F.Supp. 1208, 1219 (D.Kan.1986); Wight v. Agristor Leasing, 652 F.Supp. 1000, 1013 (D.Kan.1987); see also Barkley Clark, Lemon Aid For Kansas Consumers, 46 J.K.B.A. 143, 147 (1977). Plaintiffs do not allege any other attempts by defendants to disclaim or limit the implied warranties which they owe plaintiffs. Both defendants are entitled to summary judgment on plaintiffs' claim of unconscionable attempts to limit implied warranties.

### 2. Unconscionable Conduct Generally

■ Plaintiffs next argue that Newmar's conduct is unconscionable because plaintiffs would not have purchased the vehicle if Newmar had informed them about the weight defect.[12] The Kansas

---

**12.** In the pretrial order, plaintiffs make this claim against both defendants. See Doc. # 46 at 3. In their response to the Wilcox summary judgment motion, however, plaintiffs' state only that Wilcox acted unconscionably in attempting to limit implied warranties. See

Doc. # 61 at 10–11. The Court therefore finds that plaintiffs have abandoned any claim of unconscionability based on Wilcox's failure to inform plaintiffs about the weight problem. Even if plaintiffs did not intend to abandon this claim, Wilcox is still entitled to summary

Consumer Protection Act limits not only deceptive practices but also " 'unconscionable' practices which may not involve misrepresentations but are considered too one-sided to stand." Barkley Clark, *The New Kansas Consumer Legislation*, 42 J.K.B.A. 147, 152 (1973). Under K.S.A. § 50–627(b):

> The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following:
>
> (1) That the supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor;
>
> (2) that, when the consumer transaction was entered into, the price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers;
>
> (3) that the consumer was able to receive a material benefit from the subject of the transaction;
>
> (4) that, when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer;
>
> (5) that the transaction the supplier induced the consumer to enter into was excessively one-sided in favor of the supplier.
>
> (6) that the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; and

> (7) that the supplier excluded, modified or otherwise attempted to limit either the implied warranties of merchantability for a particular purpose or any remedy provided by law for a breach of those warranties.

Kansas has also identified ten general factors for courts to use in determining unconscionability:

> (1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position [citations omitted]; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods [citations omitted]; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect [citation omitted]; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract [citation omitted]; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate [citation omitted]; and (10) inequality of bargaining or economic power. [Citations omitted.]

*Gonzales*, 266 Kan. 141, 967 P.2d at 330–31 (Lockett, J. dissenting) (quoting *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 758–59, 549 P.2d 903 (1976)).

---

judgment because plaintiffs have failed to raise a genuine issue of fact whether Wilcox "knew or had reason to know" about the weight problem. *See* K.S.A. § 50–627(b). Without this knowledge, Wilcox had no rea-

son to know that its statements about the RV's weight capacity, and its failure to mention any weight problem, were unconscionable. *Id; see also Musil v. Hendrich*, 6 Kan.App.2d 196, 200–01, 627 P.2d 367, 372 (1981).

Examining the seven factors listed in Section 50–627(b), the Court finds no evidence that Newmar took advantage of plaintiffs' infirmities or inabilities. *See* K.S.A. § 50–627(b)(1). Plaintiffs do not allege that they did not understand the terms of the agreement; they allege that they understood the terms, but that the terms were false. Even if plaintiffs allege that Newmar should not have based the UVW on dry fuel tanks because this goes against industry standard, the evidence is uncontroverted that Tufts understood that the UVW was based on empty tanks.

The record is also devoid of evidence that the price of the RV grossly exceeded the price for similar property or services. *See* K.S.A. § 50–627(b)(2). Plaintiffs do not challenge the price that they paid; they challenge the fact that they received a product which was not what Newmar represented. In addition, plaintiffs have received a benefit from the transaction. *See* K.S.A. § 50–627(b)(3). While that benefit is limited by the weight problem, the evidence shows that plaintiffs have used the RV on various occasions. The record does not suggest that plaintiffs have received no material benefit from the transaction. *See Remco Enterprises, Inc. v. Houston,* 9 Kan.App.2d 296, 303, 677 P.2d 567, 573 (1984); *Musil,* 6 Kan.App.2d at 200–01, 627 P.2d at 372. While plaintiffs are unable to carry much weight, they used their RV to travel over 12,000 miles.

Plaintiffs also do not claim that they were unable to pay for the RV. *See* K.S.A. § 50–627(b)(4). Nor do they suggest that Newmar made a misleading statement of opinion. *See* K.S.A. § 50–627(b)(6). While plaintiffs allege that Newmar provided false weight information and that they relied upon the information, the weight information is not a "statement of opinion" within the meaning of Section 50–627(b)(6). As the comment to Section 60–527 states:

a violation of this subsection would occur if a prospective purchaser asked a supplier what the useful life of a paint job

was and the supplier, with reason to know that repainting would be necessary within two years, responded, "in my opinion the paint will wear like iron." Overt factual misstatements expressed in form of opinion are dealt with by 50–626's proscription of deceptive consumer sales practices. For example, a violation of 50–626 would occur if a prospective purchaser asked a supplier what the useful like of a two-year paint job was and the supplier responded "in my opinion repainting will not be necessary for five years."

In this case, plaintiffs allege that defendants provided false information, not misleading statements of opinion. The Court finds that Section 60–527(b)(6) does not apply to plaintiffs' allegations here; the allegations better fit within the prohibition of deceptive acts and practices under Section 50–626.

The issue remains, however, whether the contract is unfairly one-sided. *See* K.S.A. § 60–627(b)(5). Assuming that plaintiffs are able to prove their allegations, the limited benefits that plaintiffs have received are notably less than what Newmar received in exhange. Applying the general factors of unconscionability, the Court is unable to say that Newmar's actions were not unconscionable as a matter of law. Specifically, plaintiffs' allegations concerning the circumstances surrounding the execution of the contract, its purpose and actual effect suggest unconscionable conduct. If plaintiffs' allegations are true, Newmar used false weight information to induce plaintiffs to purchase its RV. As a result, Newmar received full price for the RV, while plaintiffs received an RV that is able to carry themselves but little else. The parties' agreement therefore shows an overall imbalance in the obligations and rights imposed by the bargain. *See Wille,* 219 Kan. at 759, 549 P.2d at 907. Plaintiffs paid a significant amount of money for a product that provides significantly less carrying capacity than Newmar led plaintiffs to believe it

would provide. The Court therefore denies Newmar's motion for summary judgment regarding plaintiffs' unconscionability claim.

**IT IS THEREFORE ORDERED** that the *Motion For Summary Judgment* (Doc. # 50) filed January 27, 1999 by Wilcox Homes and RV Center, Inc. be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that the *Motion For Summary Judgment* (Doc. # 47) filed January 27, 1999 by Newmar Corporation be and hereby is **DENIED.**