No. 102,731

STATE OF KANSAS, *ex rel.* ROBERT D. HECHT, District Attorney Third Judicial District, *Appellee*, v. THE CITY OF TOPEKA, KANSAS; NORTON BONAPARTE, City Manager of the City of Topeka; MUNICIPAL SERVICES GROUP, INC.; LAWSON SOFTWARE AMERICAS, INC., *Appellees*, and SCHREIB-AIR, INC., *Appellant*.

(293 P.3d 713)

Opinion filed February 1, 2013.

*Thomas M. Rhoads*, of Glaves, Irby and Rhoads, of Wichita, argued the cause and was on the brief for appellant.

*Robert J. Perry*, special prosecutor, argued the cause, and *Chadwick J. Taylor*, district attorney, was with him on the brief for appellees.

The opinion of the court was delivered by

*Per Curiam*: The City of Topeka attempted to purchase a new police helicopter. The State filed an action seeking a declaratory judgment that the agreement between the City and Schreib-Air, Inc. (Schreib-Air), the helicopter dealer, was "invalid, void *ab initio*, and *ultra vires*" in violation of the Kansas cash-basis law, K.S.A. 10-1101 *et seq.* The State also requested a writ of quo warranto stating that the City and the city manager acted without valid and lawful authority and that any agreements entered into as a result were invalid, unlawful, and void. Ultimately, the district court granted summary judgment in favor of the State. Schreib-Air appealed. We transferred the case from the Court of Appeals to this court pursuant to K.S.A. 20-3018(c). We now affirm.

## FACTS

The facts of this case are largely undisputed. On June 26, 2007, the Topeka City Council adopted Resolution No. 7972 authorizing a lease-purchase agreement between the City and Municipal Services Group, Inc. (MSG) to finance the purchase of a Robinson helicopter. That resolution, however, was vetoed by the mayor on July 2, 2007. The council members in favor of the resolution attempted to override the veto on July 24, 2007, but failed to acquire the necessary six votes to do so.

On December 4, 2007, the council approved by a five-to-three vote a "communication" authorizing the city manager to enter into a lease-purchase agreement for the purpose of purchasing the Robinson helicopter. The communication authorized two contracts: one with Schreib-Air to purchase the helicopter and one with MSG to finance the purchase. The communication identified the purchase price, the interest rate for financing the purchase, the total to be paid over 5 years broken down into principal and interest ($820,371.90: $740,000 principal and $80,371.90 interest), the annual payment amount ($164,074.38), and the funding source—Topeka Police Department's operating budget.

The city manager subsequently signed the contract with Schreib-Air on December 6, 2007. Under the terms of that contract, the City agreed to purchase a helicopter from Schreib-Air for the price of $740,000. The contract also stated that the City would pay a

deposit of $74,000 upon execution of the lease-purchase agreement which could be retained by Schreib-Air as liquidated damages should the City fail to fulfill the terms of the contract.

After the lease-purchase agreement was signed, the mayor vetoed the communication on December 11, 2007. Despite the veto, on January 4, 2008, Schreib-Air billed the City for the $74,000 deposit, which the city manager authorized MSG to pay. Although it is not clear why, in April 2008, the council adopted—by a five-to-four vote—Resolution No. 8052 authorizing a lease-purchase agreement with MSG to finance the lease purchase of the Robinson helicopter. Not surprisingly, that resolution was again vetoed by the mayor.

The State filed suit in Shawnee County District Court seeking a declaratory judgment that the agreement between the City and Schreib-Air was "invalid, void *ab initio*, and *ultra vires*" because the lease-purchase agreement failed to comply with the cash-basis law. See K.S.A. 10-1101 *et seq*. The State also requested a writ of quo warranto based on its contention that the City and the city manager acted without valid and lawful authority and that any agreements entered into as a result were invalid, unlawful, and void.

While the City filed a motion to dismiss, claiming that the issues were moot because the helicopter was never actually purchased, the district court held that one issue—whether the City had any obligation to Schreib-Air or MSG—was still viable. In granting summary judgment in favor of the State, the district court held that the transactions with Schreib-Air and MSG violated the cash-basis law. Accordingly, the court ordered that any money given to MSG or Schreib-Air related to the helicopter purchase was to be returned immediately.

Schreib-Air filed a motion to alter or amend the district court's decision, arguing that its contract with the City was valid at the time it was signed and that any violations of the cash-basis law related to the City's financing agreement with MSG, not the contract for purchase. Additionally, Schreib-Air argued that the payment it received was from MSG, not the City; therefore, Schreib-Air had no obligation to the City to return the deposit. Instead, it

suggested that the City's obligation, if any, was to MSG alone. Schreib-Air maintained that the sale of the helicopter was a valid and lawful agreement "regardless of any alleged failure by the City and MSG to fund the purchase legally [and] [t]he fact that the City was unable to obtain the financing it preferred [did] not render the contract invalid." The district court found Schreib-Air's arguments disingenuous. The court reasoned that knowledge that the authorization for purchase could be vetoed by the mayor based on the mayor's prior veto and the city ordinances regarding the city manager's power to contract was imputed to Schreib-Air.

Schreib-Air timely appealed the district court's decision.

## ANALYSIS

On appeal, Schreib-Air argues that the district court erred in granting summary judgment in favor of the State based on its conclusion that Schreib-Air's lease-purchase agreement with the City for the sale of the helicopter violated the cash-basis law and was thus ultra vires. Schreib-Air contends that its agreement with the City was a distinct and valid contract at the time of its execution on December 6, 2007, and that any possible violations of the cash-basis law were attributable only to the City's financing contract with MSG. Accordingly, Schreib-Air argues that it is entitled to keep the $74,000 deposit it received pursuant to the lease-purchase agreement with the City.

Our standard of review for a district court's grant or denial of a motion for summary judgment is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

Furthermore, "[t]he interpretation and legal effect of a written contract are matters of law over which an appellate court has unlimited review. [Citation omitted.] Regardless of the district court's construction of a written contract, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009).

In general, the cash-basis law prohibits municipalities from creating indebtedness in excess of funds actually on hand in the treasury of the municipality. K.S.A. 10-1112. Contracts entered into by municipalities in violation of the cash-basis law are void. K.S.A. 10-1119; *State ex rel. Tomasic v. Unified Gov't of Wyandotte County/ Kansas City*, 265 Kan. 779, 803, 962 P.2d 543 (1998). When a city signs a contract that it is not legally allowed to enter into, the contract "is ultra vires in the sense that it is not within the power of the municipality to make." *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, Syl. ¶ 7, 181 P.3d 549 (2008). If a contract was made in express violation of the law, the contract is unenforceable and not even estoppel may save the agreement. *Genesis*, 285 Kan. 1021, Syl. ¶ 9; *cf. Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001) (contracts in contravention of public policy are generally void and unenforceable). Finally, "[o]ne contracting with a municipal corporation is bound at his or her peril to know the authority of the municipal body with which he or she deals." *Genesis*, 285 Kan. 1021, Syl. ¶ 8.

In December 2007, the City agreed to purchase a helicopter from Schreib-Air for $740,000. The City would pay Schreib-Air a deposit of $74,000 at the time of signing and pay the remaining $666,000 upon delivery of the helicopter. The contract provided that Schreib-Air could keep the $74,000 deposit as liquidated damages should the City fail to fulfill the terms of the contract.

Notably, Schreib-Air does not contend, and there is nothing in the record to suggest, that the City had more than $740,000 in its treasury on December 6, 2007, for the purpose of purchasing the helicopter. Accordingly, unless the City incurred the indebtedness contemplated in the Schreib-Air contract pursuant to an exception to the cash-basis law, the contract was entered into in violation of

the law, rendering it void and unenforceable. See K.S.A. 10-1112 ("Unless otherwise provided in this act, it shall be unlawful . . . for the governing body of any municipality to create any indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose . . . ."); K.S.A. 10-1119 ("Any contract entered into between the governing body of any municipality and any person, which violates the provisions of this act, shall be void, and any order, warrant, check or other evidence of indebtedness drawn on the treasurer of any municipality in violation of the provisions of this act shall be void.").

There are a few authorized exceptions to the proscription against a municipality creating indebtedness in excess of funds actually on hand in its treasury. One of those exceptions is a lease-purchase agreement. K.S.A. 10-1116b states:

"Nothing in the provisions of K.S.A. 10-1101 *et seq.*, and amendments thereto, shall prohibit a municipality from entering into . . . (3) a lease-purchase agreement, if any of such agreements specifically state that the municipality is obligated only to pay periodic payments or monthly installments under the agreement as may lawfully be made from (a) funds budgeted and appropriated for that purpose during such municipality's current budget year or (b) funds made available from any lawfully operated revenue producing source. For the purpose of this act, a lease-purchase agreement shall include a lease with an option to buy or an installment-purchase agreement."

The parties agree that the City's contract with MSG to finance the purchase of the helicopter was a lease-purchase agreement. But in order for such an agreement to be valid under the cash-basis law, it must be approved by "a majority vote of *all* members of the governing body." (Emphasis added.) K.S.A. 10-1116c(a). The compilation of charter ordinances appended to the Topeka City Code clearly defines the governing body as a "ten (10) member body consisting of nine (9) district Council members and one (1) Mayor." Appendix A—Compilation of Charter Ordinances, Sec. A2-21(a). Additionally, section A2-30(c) requires there be approval by a majority vote of more than five council members if statutorily required. Thus, under the plain language of K.S.A. 10-1116c and the City Code six affirmative votes from the governing body were needed to authorize the agreement with MSG.

The facts clearly show that the lease-purchase agreement with MSG was never approved by six affirmative votes. The city council could only muster five votes in favor of the lease-purchase agreement with MSG, and the mayor repeatedly vetoed the agreement. Accordingly, the agreement with MSG was never validly authorized under the cash-basis law, rendering that agreement void. Consequently, without a valid means of financing the purchase of the helicopter, the City's agreement with Schreib-Air was ultra vires, void, and unenforceable due to the agreement being entered into in violation of the cash-basis law. See K.S.A. 10-1112; K.S.A. 10-1119.

We reached a similar conclusion in *Genesis*. In that case, a health club claimed a breach of contract and asserted the doctrine of promissory estoppel against the City of Wichita when the city failed to issue certain bonds and tax abatements pursuant to a letter of intent issued by the city to the health club. This court determined that the city's failure to comply with a statutory notice requirement prevented the city's letter of intent to issue the bonds and tax abatements from being considered an enforceable agreement. Specifically, the court reasoned that where the notice requirement was unmet, the city had no power to issue the bonds and, thus, no power to approve a letter of intent. Accordingly, we concluded that the agreement was ultra vires, a failing that could not be overcome by promissory estoppel despite the fact that the health club had spent more than $1 million in reliance on the letter of intent. *Genesis*, 285 Kan. at 1029, 1041-43.

Like the letter of intent contemplated in *Genesis*, Schreib-Air's agreement with the City was void when entered into because the City failed to satisfy the statutory conditions that would allow it to purchase the helicopter. Specifically, the City was either required to have at least $740,000 in its treasury for the purpose of buying the helicopter, see K.S.A. 10-1112, or it was required to secure financing for the purchase of the helicopter in compliance with the cash-basis law. Because neither of these conditions was met prior to the City entering into the agreement with Schreib-Air, the contract was made in violation of the cash-basis law and, consequently, the contract is unenforceable. See *Genesis*, 285 Kan. 1021, Syl. ¶

6 ("If a municipal corporation enters into a contract it has no power to make, it is ultra vires and unenforceable and no further inquiry into the contract's validity is necessary.").

Affirmed.

MORITZ, J., not participating.

DANIEL A. DUNCAN, District Judge, assigned.