No. 101,690

VIA CHRISTI REGIONAL MEDICAL CENTER, INC., *Appellee*, v. IVAN M. REED, *Appellant*, and PATTERSON GOTT & BURK, L.C., as successor entity of PATTERSON GOTT & GRAYBILL, L.C., *Defendant*.

(314 P.3d 852)

504

Opinion filed December 20, 2013.

*N. Russell Hazlewood*, of Graybill & Hazlewood, L.L.C., of Wichita, argued the cause, and *Jacob S. Graybill*, of the same firm, was with him on the briefs for appellant Ivan M. Reed.

*Jay F. Fowler*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Holly A. Dyer* and *James D. Oliver*, of the same firm, were with him on the briefs for appellee Via Christi Regional Medical Center, Inc.

The opinion of the court was delivered by

BEIER, J.: Ivan Reed received life-saving medical treatment at Via Christi Regional Medical Center, Inc. (Via Christi), after his car collided with a Union Pacific Railroad train. Via Christi filed a hospital lien under K.S.A. 65-406 *et seq.* to collect on its bill for the services provided Reed. The lien initially purported to encumber $84,744.11 of Reed's $540,000 settlement with Union Pacific; Via Christi eventually modified the amount to $83,365.64 held by Reed's counsel pending resolution of this dispute.

Via Christi brought this action against Reed to enforce its lien. Reed denied the lien's validity and asserted counterclaims under the Kansas Consumer Protection Act (KCPA), alleging that Via Christi had engaged in deceptive and unconscionable acts and practices in its efforts to enforce the lien. Both parties filed motions for partial summary judgment. The district court judge ruled in favor of Via Christi on the lien and against Reed on his counterclaims, and the judge entered a journal entry to enforce the full amount of the lien.

The Court of Appeals panel affirmed the enforceability of Via Christi's lien but, recognizing that Via Christi had received more from the district judge than it had sought in its motion, vacated the amount awarded and remanded the case for a hearing on what portion of the lien amount constituted an equitable distribution

under K.S.A. 65-406(c). *Via Christi Regional Med. Center, Inc. v. Reed*, 45 Kan. App. 2d 365, 367-70, 247 P.3d 1064 (2011).

Reed successfully petitioned this court for review of the Court of Appeals decision.

We reverse the Court of Appeals and the district court on the enforceability of Via Christi's lien and remand to the district court for entry of judgment in favor of Reed regarding Via Christi's lien and its equitable distribution claim against Reed's settlement proceeds and then for further proceedings on Reed's KCPA claims.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began on November 18, 2001, when a Union Pacific train struck the vehicle Reed was driving. Paramedics initially took Reed to a hospital in Hutchinson, but he was transferred to Via Christi in Wichita for emergency trauma care.

The day after the accident, Reed's sister met with a Via Christi representative in the hospital's surgery waiting room. The representative asked Reed's sister to sign a document titled "ADMISSION CONSENT, PROMISE TO PAY FOR SERVICES AND ASSIGNMENT OF INSURANCE BENEFITS." Reed's sister said Reed was unemployed and did not have health insurance and expressed concern about Paragraph 8 of the document, which was labeled "PROMISE TO PAY FOR SERVICES AND GRANT OF SECURITY INTEREST IN HEALTHCARE INSURANCE RECEIVABLIES." The representative told Reed's sister to cross out that paragraph, write "Do not agree to pay" next to it, and initial the document next to those marks. Reed's sister followed these instructions.

The consent document also included the following language in its Paragraph 4:

"DIRECTION TO PAY MEDICAL INSURANCE BENEFITS DIRECTLY TO MEDICAL CENTER AND ASSIGNMENT OF INSURANCE BENEFITS. I certify that the information given by me in applying for payment under the Social Security Act is correct. I authorize release of any information needed to act on this request and direct that payment of authorized benefits be made on my behalf. I hereby assign payment for the unpaid charges of physicians' services for whom the Medical Center is authorized to bill. I understand and agree that I am responsible for any remaining balance not covered by insurance. I promise to pay

Via Christi any medical insurance benefits I receive which relate to or arise from hospital care which is the subject of this admission. I hereby assign to Via Christi any and all medical benefits payable from any policy of insurance insuring the patient or person responsible for the patient's care (including, but not limited to, Medicare, Medicaid, Blue Cross & Blue Shield and others) to be paid directly to Via Christi to be applied to the charges for services rendered."

The consent document did not include any language indicating that Reed's sister was authorized to act on Reed's behalf in any way. The document's line for the signature of the "Patient or Responsible Person" was left blank. Reed's sister signed and dated the document as "(Sister) Edie Reed" on the document's line for the signature of "Other." Rochelle Bryant also signed the document for Via Christi.

Via Christi also informed Reed's sister that the hospital worked with Midland Professional Associates (Midland) and that a representative of Midland would talk to her and Reed about applying for public benefits for Reed. A representative from Midland met with Reed and helped him fill out a benefits application dated November 27, 2001. However, for reasons unknown, this application was never filed with what was then called the Kansas Department of Social and Rehabilitation Services (SRS). Had the application been filed and approved, the hospital could have been reimbursed $19,367.68 for its services through Reed's public benefits.

Reed was discharged from Via Christi on December 2, 2001. Three days after his release, Reed sought public benefits through SRS. He qualified for SRS's MediKan benefits program, and his benefits were made retroactive to the first day of the month in which his application was approved, *i.e.*, December 1. Via Christi submitted a claim for services provided on and after that date; but it failed to include Reed's beneficiary number, and the claim was denied.

Almost a year later, Via Christi filed a Notice of Hospital Lien pursuant to K.S.A. 65-406 *et seq.*, in district court in Sedgwick County. It sought to collect from any tort recovery Reed received as a result of the train-car accident. Via Christi claimed that its "reasonable and necessary charges" for Reed's treatment totaled

$84,774.11, and it attached a 45-page itemized statement to document the charges. A copy of the notice with the billing statement was sent to Reed and his attorneys. Via Christi did not identify Union Pacific as an allegedly liable third party in the filing, and it did not provide Union Pacific with notice of the lien.

In December 2002, Reed sent a demand letter to Union Pacific seeking $2,285,487.14 in damages, providing Union Pacific with the Via Christi itemized bill. Reed ultimately filed suit against Union Pacific, and he and the railroad settled for $540,000 in August 2004.

Attorneys for Reed and Via Christi attempted negotiations to resolve the hospital lien, and ultimately $83,365.64 was placed in Reed's attorneys' trust account. Via Christi unsuccessfully offered to settle for $65,000. Reed sent Via Christi a check for $21,000 as "full and final payment." Via Christi returned the check uncashed.

Via Christi filed this action in October 2004, seeking enforcement of its lien against the settlement proceeds in the trust account of Reed's attorneys. It later amended its petition to advance a claim that it was a third-party beneficiary entitled to specific performance of Reed's settlement agreement with Union Pacific, including an indemnification provision recognizing its lien.

Reed's answer denied the validity of Via Christi's lien. Reed also pursued counterclaims under the KCPA, alleging that the hospital had engaged in deceptive and unconscionable acts and practices in 736 "individual sales" reflected in his hospital bill, each of which qualified as a "consumer transaction" under K.S.A. 50-624(c). He set out his deceptive act allegations and prayer for injunctive relief in this way:

"Via Christi has engaged in a series of 'deceptive' acts and practices in connection with each consumer transaction . . . .

. . . .

"Reed is entitled, for the benefit of the general public, to an injunction or restraining order calculated to curb and prevent Via Christi from continuing its practices of abusing its patients/consumers through its deceptive charging and billing practices, its practice of concealing and failing to credit to its patients' accounts payments received from Medicaid, its employment of deceptive Admission Agreement, and its deceptive misuse of the Kansas hospital lien statute."

Reed set forth the following, very similar allegations and prayer for injunctive relief on his unconscionable acts and practices claims:

"Via Christi has engaged in 'unconscionable' acts and practices in connection with a series of consumer transactions . . . .

. . . .

"Reed is entitled, for the benefit of the general public, to an injunction or restraining order calculated to curb and prevent Via Christi from continuing its practice of abusing its patients/consumers through its unconscionable charging and billing practices, its practice of failing to credit its patient's accounts in the amount of payments received from Medicaid, its practice of requiring the patient to sign a one-sided Admission Agreement by which it forces patients to agree to make assignments of property rights without any corollary obligation for Via Christi to provide any meaningful consideration, and its practice of misusing the Kansas hospital lien statute."

When Reed filed his answer and counterclaims in response to Via Christi's amended petition, his allegations on his KCPA claims did not change.

During discovery, an audit of Reed's hospital bill revealed certain overcharges for items and services Reed did not receive and duplicate billing on specific entries. The audit also identified certain undercharges in Reed's bill.

If the district court entered a pretrial order, the record on appeal does not include it. The record does contain a pretrial questionnaire filed by Via Christi in which it sets forth three "equitable theories": (1) it is entitled to equitable distribution under its lien; (2) it is a third-party beneficiary of Reed's settlement agreement with Union Pacific; and (3) it "is entitled in equity to the full amount of its lien to be paid from the trust account." The record does not include a pretrial questionnaire filed by Reed.

Reed and Via Christi each sought partial summary judgment in the district court.

Reed filed a motion for partial summary judgment in his favor on Via Christi's lien, arguing that the lien was ineffective because Via Christi failed to comply with K.S.A. 65-407 by identifying and giving notice to Union Pacific as "a corporation alleged to be liable to Reed for the injuries he received in the accident." Via Christi responded to Reed's motion with three alternative arguments: (1) the lien was effective against Reed, if not against Union Pacific; (2)

Union Pacific had actual knowledge of the lien and it was therefore effective against both the railroad and Reed; and (3) Reed lacked standing to challenge the lien.

Via Christi sought partial summary judgment on Reed's KCPA counterclaims, arguing that Reed did not qualify as an "aggrieved" consumer under K.S.A. 50-634. Via Christi also argued that its charges did not "grossly exceed" the rates charged by other Level I trauma hospitals and that Reed had come forward with no evidence of deceptive acts or practices. Reed contended in response that the hospital engaged in arbitrary pricing not reflecting the amounts its patients actually paid. He argued that evidence of overcharges in the hospital's billing statement gave rise to disputed material facts for trial of his KCPA counterclaims.

Reed also filed a second motion for partial summary judgment on the lien, arguing that his status as a MediKan consumer prevented Via Christi from seeking payment of its charges from him.

In the course of the summary judgment proceedings in the district court, Reed also argued that the consent document his sister had signed absolved him of any personal liability for Via Christi's charges. Without an underlying debt, Reed argued, the Via Christi lien was "void." Reed did not specifically argue that Via Christi was estopped from asserting a debt for more than it would have received if Midland had filed his SRS application form in November 2001 and benefits had been awarded for that month.

In response to Reed's motion for partial summary judgment, Via Christi stated it had "informed th[e] district [c]ourt that it [was] willing to reduce the amount it [was] seeking by the net overcharges for services as documented." Reed challenged this assertion in his reply memorandum, arguing that seeking the full lien amount and refusing to amend the lien amount in the public record were deceptive and unconscionable acts; Via Christi's "belated offer" to reduce its claim could not "take it back." Reed also challenged Via Christi's right to account for any undercharges by offering to reduce the amount sought only by "net" overcharges.

The district judge ruled in favor of Via Christi on all of the summary judgment motions. In addition, although Via Christi had not sought such a ruling in its motion, the judge awarded the full

amount of \$83,365.64 to the hospital. On Reed's KCPA counter-claims, the judge omitted any analysis of deceptive acts and practices, discussing only unconscionability. The judge said that Reed sought "to attack the healthcare system" and that "there is virtual universal agreement [that] it is in need of repair" but ruled that the actions of Via Christi were not unconscionable.

On Reed's appeal, a panel of our Court of Appeals held that Kansas' hospital lien statutes should be liberally construed to accomplish the statutes' public purpose. Because, in the panel's view, Via Christi "substantially complied" with K.S.A. 65-407's notice requirement, the lien was effective. No underlying debt was necessary to support it. Nevertheless, the panel remanded the case to the district court to determine whether the full amount was due to Via Christi as an "equitable distribution" of Reed's settlement proceeds. On Reed's KCPA unconscionability counterclaims, the panel held that, as a matter of law, a hospital cannot violate the KCPA by seeking enforcement of a lien to recover for services rendered. The panel disposed of Reed's KCPA deceptive acts claims by ruling that Reed was not an "aggrieved" consumer under K.S.A. 50-634(a), (b). See *Via Christi*, 45 Kan. App. 2d at 360-71.

## ISSUES

Before this court, Reed raises eight issues.

The Court of Appeals panel decided each of the first four against Reed. They, reworded and reordered for clarity, raise the following questions: (1) Can a hospital lien be effective if there is no underlying debt for the lien to secure? (2) Can a hospital lien be effective when notice was not given in the manner prescribed by K.S.A. 65-407? (3) Can a patient in Reed's position be "aggrieved" for purposes of bringing claims under the KCPA? and (4) Is it possible for a hospital in the position of Via Christi to violate the KCPA's prohibitions on deceptive and/or unconscionable acts or practices when it attempts to enforce its lien?

The Court of Appeals did not address Reed's remaining four questions: (1) Can a hospital enforce a lien against a MediKan consumer? (2) Is Via Christi estopped from collecting charges because Midland failed to submit Reed's benefits application? (3)

When MediKan pays some but not all of a patient's bill for a single hospitalization, how must the partial payment be credited? and (4) Does K.S.A. 65-406 create a private cause of action, and, if so, is it unconstitutionally vague?

## DISCUSSION

*Standard of Review*

This court's standard of review on a district court's grant or denial of a motion for summary judgment is well established:

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009)." *State ex rel. Hecht v. City of Topeka*, 296 Kan. 505, 508, 293 P.3d 713 (2013).

In addition, " '[statutory] liens, rights acquired under them, and [the] procedure to obtain such rights, were unknown to the common law.' " *Boyce v. Knudson*, 219 Kan. 357, 362, 548 P.2d 712 (1976) (quoting *Bell v. Hernandez*, 139 Kan. 216, 218, 30 P.2d 1101 [1934]) (discussing mechanics' liens). Thus lien claimants "must bring themselves clearly within the provisions of the authorizing statute" in order to maintain a valid lien. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 170, 910 P.2d 839 (1996). "The statute must be followed strictly with regard to the requirements upon which the right to lien depends." 259 Kan. at 170. Statutory interpretation raises questions of law on which we exercise unlimited review. *Schlaikjer v. Kaplan*, 296 Kan. 456, 464, 293 P.3d 155 (2013).

"When courts are called upon to interpret statutes, the fundamental rule governing that interpretation is that the intent of the legislature governs if that intent

can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. For this reason, when the language of a statute is plain and unambiguous, courts need not resort to statutory construction. Instead, an appellate court is bound to implement the legislature's expressed intent. Only where the face of the statute leaves its construction uncertain may the court look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *State v. Arnett*, 290 Kan. 41, Syl. ¶ 1, 223 P.3d 780 (2010).

## Hospital Lien Statutes

K.S.A. 65-406(a) provides:

"Every hospital, which furnishes emergency, medical or other service to any patient injured by reason of an accident not covered by the workers compensation act, if such injured party asserts or maintains a claim against another for damages on account of such injuries, shall have a lien upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected by such patient, or by such patient's heirs, personal representatives or next of kin in the case of such patient's death, whether by judgment or by settlement or compromise."

As the Court of Appeals panel noted, a hospital lien amount must be limited to the "reasonable and necessary charges" associated with the "treatment, care and maintenance of such patient in such hospital up to the date of payment of such damages." K.S.A. 65-406(b). If the lien amount is greater than $5,000, then the claimant is entitled to the first $5,000 of the claimed lien. Any amount in excess of $5,000 "shall only be enforceable to the extent that its enforcement constitutes an equitable distribution of any settlement or judgment." K.S.A. 65-406(c).

K.S.A. 65-407 governs notice and filing requirements for a hospital lien:

"No such lien shall be effective unless a written notice containing an itemized statement of all claims, the name and address of the injured person, the date of the accident, the name and location of the hospital, and the name of the person or persons, firm or firms, corporation or corporations alleged to be liable to the injured party for the injuries received, shall be filed in the office of the clerk of the district court of the county in which such hospital is located, prior to the payment of any moneys to such injured person, his attorneys or legal representatives, as compensation for such injuries; nor unless the hospital shall also send, by registered or certified mail, postage prepaid, a copy of such notice with a

statement of the date of filing thereof to the person or persons, firm or firms, corporation or corporations alleged to be liable to the injured party for the injuries sustained prior to the payment of any moneys to such injured person, his attorneys or legal representative, as compensation for such injuries. Such hospital shall mail a copy of such notice to any insurance carrier which has insured such person, firm or corporation against such liability, if the name and address shall be known. Such hospital shall also send, by registered or certified mail a copy of such notice to such patient upon whom emergency medical or other service has been performed, if the name and address of such patient shall be known to the hospital or can with reasonable diligence be ascertained."

### Necessity of an Underlying Debt

In response to Reed's argument that the consent document limited Via Christi's recovery to insurance and public medical benefits, the Court of Appeals panel held that the Kansas hospital lien statutes do not require an underlying debt before the hospital is entitled to pursue payment through a lien. *Via Christi*, 45 Kan. App. 2d at 365. We disagree.

"An appellate court's first attempt to ascertain legislative intent is through an analysis of the language employed, giving ordinary words their ordinary meaning." *State v. Wells*, 296 Kan. 65, 83, 290 P.3d 590 (2012). A lien is "an encumbrance upon property as security for payment of a debt." *Homestead Land Title Co. v. United States*, 249 Kan. 569, 575, 819 P.2d 660 (1991); see Black's Law Dictionary 941 (8th ed. 2004) (defining lien as "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied"). Kansas courts have long recognized that a lien presupposes a debt. See *K. P. Ryl. Co. v. Thacher*, 17 Kan. 92, 102 (1876); accord 51 Am. Jur. 2d, Liens § 13.

Despite the ordinary meaning of the term "lien," the Court of Appeals panel concluded that a hospital lien does not require an underlying debt, instead basing its interpretation of the statutes in large part on what it perceived to be the statutes' public purpose. *Via Christi*, 45 Kan. App. 2d at 365.

"Part of Reed's argument before us was that he cannot be held liable under the lien statute because he was not personally liable to Via Christi (based on the statement his sister wrote on the form agreement to pay for his medical expenses). But contrary to Reed's assertions, the Kansas hospital-lien statutes do not require

an underlying debt before the hospital is entitled to its lien, and nothing in the form agreement his sister signed purported to waive the hospital's rights under the hospital-lien statutes.

"K.S.A. 65-408 provides that anyone who makes 'any payment to such [injured] patient . . . as compensation for the injury sustained' is liable to the hospital under the lien. Whether or not Reed was obligated to pay his medical expenses, 'any payment' made to him 'as compensation for the injury sustained' would be subject to the lien, and that language surely covers what Union Pacific paid Reed. This makes sense under the statute's purpose, which seeks to ensure that hospitals will treat those who are injured and that hospitals will not suffer unnecessarily heavy financial burdens by doing so. Moreover, an action to enforce a hospital lien generally is independent of common-law contract theories that require an underlying contract and debt before liability attaches. See *In re Estate of Enloe*, 109 Ill. App. 3d 1089, 1090-91, 441 N.E.2d 868 (1982)." *Via Christi*, 45 Kan. App. 2d at 365.

Even if the panel had not engaged in a premature analysis of the statutes' purpose on the way to its statutory interpretation, we would be critical of its circular reasoning. In essence, it held that a lien is valid absent an underlying debt because an underlying debt is not necessary to have a valid lien.

In addition, the panel's lone citation to an Illinois case, *In re Estate of Enloe*, 109 Ill. App. 3d 1089, 1090-91, 441 N.E.2d 868 (1982), to support its determination that "an action to enforce a hospital lien generally is independent of common-law contract theories that require an underlying contract and debt before liability attaches" is unpersuasive. *Via Christi*, 45 Kan. App. 2d at 365. The *Enloe* court, in an attempt to avoid "various arguments" concerning the existence of a valid underlying contract between an infant patient and a hospital, simply held that the Illinois Hospital Lien Statute was "not dependent upon common law contract theories." 109 Ill. App. 3d at 1090-91. According to the *Enloe* court, a patient's "debts and liability" arose out of the language of the statute, regardless of any such remedy at common law. 109 Ill. App. 3d at 1091. The *Enloe* court did not expand on its analysis or cite to any authority to support its holding, and a more recent decision by the same court casts doubt on the current vigor of the 30-year-old *Enloe* decision. See *Lopez v. Morley*, 352 Ill. App. 3d 1174, 1180-81, 817 N.E.2d 592 (2004) (no citation to *Enloe*; hospital lien covers

only the amounts of the debt owed; satisfaction of underlying debt extinguishes lien).

We hold that, giving ordinary words their ordinary meaning and following our age-old precedent, a hospital lien requires an underlying debt for the lien to secure. Without such a debt, the lien is invalid.

Did Reed owe a debt to Via Christi? A debt is a "[l]iability on a claim; a specific sum of money due by agreement or otherwise." Black's Law Dictionary 432 (8th ed. 2004); see *Decision Point, Inc. v. Reece & Nichols Realtors, Inc.*, 282 Kan. 381, 386, 144 P.3d 706 (2006). And "a hospital ordinarily is entitled to be compensated for its services, by either an express or an implied contract, and if no express contract exists, there is generally an implied agreement that the patient will pay the reasonable value of the services rendered." 40A Am. Jur. 2d Hospitals and Asylums § 8, p. 452; see *Gister v. Am. Family Mut. Ins. Co.*, 342 Wis. 2d 496, 529, 818 N.W.2d 880 (2012) ("The maxim that services rendered gives rise to a debt is as old and universal as the maxim that a lien presupposes a debt."). Although it is undisputed here that Via Christi rendered medical services to Reed, he asserts that his sister's actions mean that he contracted out of any personal liability on any debt owed to the hospital for his care.

Because the Court of Appeals held that a hospital lien did not require an underlying debt, it did not analyze the consent document signed by Reed's sister in any great detail. *Via Christi*, 45 Kan. App. 2d at 365 (noting nothing in the form agreement purported to waive hospital's rights under lien statutes). The district judge disregarded the consent document and instead relied on a theory of unjust enrichment, concluding that "it would be unconscionable to permit plaintiff to receive free medical care and then allow him to recover damages for medi[c]al services from the tortfeasor and the[n] pocket the windfall." The cases cited in support by the district court, however, did not involve a patient who purported to have contracted with the hospital to relieve him or her of any financial obligation. See *Memedovic v. Chicago Transit Authority*, 214 Ill. App. 3d 957, 959, 574 N.E.2d 726 (1991) ("[d]isallowance of the hospital's lien would result in a double re-

covery"; hospital's lien effective against patient's monetary award after jury verdict in personal injury action); *In re Estate of Wade,* 156 Ill. App. 3d 844, 848, 510 N.E.2d 99 (1987) (hospital's advance to private duty nurses for patient's benefit recoverable under hospital lien act); *Broadlawns, Etc. v. Estate of Major,* 271 N.W.2d 714, 715-16 (Iowa 1978) (hospital not liable for estate's attorney fees in connection with successful wrongful death claim against third party; proceeds of claim used to satisfy hospital's lien); see also *Gordon v. Forsyth County Hospital Authority, Inc.,* 409 F. Supp. 708, 719 (M.D.N.C. 1976) (unconscionable to permit taxpayers to bear expense of providing free medical care to patient, then allow patient to recover damages for medical services from tortfeasor, pocketing windfall), *aff'd in part and vacated in part on other grounds* 544 F.2d 748 (4th Cir. 1976).

We have reviewed the language of the entire consent document and conclude that, even with Reed's sister's amendments, it does not, as a matter of law, relieve Reed of the debt that arose upon Via Christi's services to him. It is not as clear as Reed suggests. Although his sister crossed out Paragraph 8 and initialed that mark, Paragraph 4 was left intact. Paragraph 4 reads in pertinent part: "I understand and agree that I am responsible for any remaining balance not covered by insurance."

Ordinarily the ambiguity in the document's language—and any conflict about the intentions of the parties arising out of the conversation between Reed's sister and Bryant—would need to be settled on remand for trial in the district court. In this particular case, however, the next issue we take up is dispositive on the unenforceability of the Via Christi lien. No remand to determine whether an underlying debt existed is necessary. We can simply assume its existence for the purposes of our discussion below.

*Effectiveness of Lien*

Although Via Christi's lien attached under K.S.A. 65-406(a), K.S.A. 65-406(a) is not the only statute that set out requirements a hospital must meet in order to hold an *effective* hospital lien. K.S.A. 65-407 addresses perfection of such liens. Perfection typically establishes priority among creditors and does not affect the

validity of the underlying debt or security interest as against the debtor. See 68A Am. Jur. 2d, Secured Transactions §§ 259, 261, pp. 267, 269 (" 'Perfection' is a concept distinct from 'attachment.' "); see also *In re Elkins Welding & Const., Inc.*, 258 B.R. 216, 220 (10th Cir. 2001) (same). But Kansas' hospital liens differ from the norm in this regard. K.S.A. 65-407 clearly and unequivocally states that "[n]o such lien shall be effective unless" certain requirements are met. Via Christi does not dispute that it failed to observe and comply with those requirements. It did not name or give notice to Union Pacific as a "corporation . . . alleged to be liable to the injured party for the injuries received." See K.S.A. 65-407.

Via Christi attempts to persuade us that substantial compliance with K.S.A. 65-407 is enough and that Union Pacific's actual knowledge of the lien can stand in for the hospital's substantial compliance in this case. It relies, as did the Court of Appeals panel, on opinions from this court in which we have held that, once a lien attaches, statutes setting out further procedures are to be liberally construed in the lienholder's favor. See *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 227, 73 P.3d 753 (2003) (addressing recently enacted statutory requirements predating attachment of mechanic's lien); *Haz-Mat Response*, 259 Kan. at 171 (interpreting phrase "improvement of real property" in mechanic's lien statute; plaintiff complied with all statutory filing requirements).

But Via Christi and the Court of Appeals panel have placed more weight on these cases than they can bear. Absent ambiguity or uncertainty in the language of K.S.A. 65-407, we are not free to read in a substantial compliance or actual knowledge escape hatch. Indeed, when the legislature has intended for the courts to require no more than substantial compliance with statutory requirements, it has had no trouble expressing this intention. See, *e.g.*, K.S.A. 12-105b; see also *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013) ("[W]e will not speculate as to . . . legislative intent . . . and will not read into the statute something not readily found in it.").

Strict compliance with the hospital lien statutes was necessary. Via Christi did not strictly comply with K.S.A. 65-407. Its lien was

therefore ineffective and unenforceable, not just against Union Pacific but against Reed as well.

*Viability of KCPA Claims*

The KCPA prohibits both deceptive and unconscionable acts and practices by a supplier in connection with a consumer transaction. K.S.A. 50-626(a); K.S.A. 50-627(a). To recover damages for either type of violation under the KCPA, a party must establish that he or she was "aggrieved" by the violation of the Act. K.S.A. 50-634(a), (b); see *Finstad v. Washburn University*, 252 Kan. 465, 472, 845 P.2d 685 (1993). The KCPA expressly provides that it is to be construed liberally in order to protect consumers from suppliers who commit deceptive and unconscionable practices. K.S.A. 50-623; *Unruh v. Purina Mills*, 289 Kan. 1185, 1207, 221 P.3d 1130 (2009). And a consumer need not establish measurable monetary damages to qualify as aggrieved. See *Lowe v. Surpas Resource Corp.*, 253 F. Supp. 2d 1209, 1229 n.16 (D. Kan. 2003).

There is no dispute in this case that Reed qualifies as a consumer, Via Christi as a supplier, and Reed's hospitalization as a consumer transaction under the KCPA. See K.S.A. 50-624(b), (c), and (j). The parties disagree on whether Reed qualifies as aggrieved.

The Court of Appeals panel determined that Reed was not aggrieved because Via Christi did not seek judgment against Reed personally. Thus "Reed's legal rights—monetary or otherwise— were not adversely affected." *Via Christi*, 45 Kan. App. 2d at 367. Were this conclusion correct, it would apply with equal force to cripple both Reed's deceptive acts and his unconscionability claims, even though the panel enunciated it only as part of its deceptive acts analysis. But it is not correct.

This conclusion ignores the economic reality of the lien's longtime operation as an encumbrance on thousands of dollars that would otherwise have been paid to Reed shortly after his settlement with Union Pacific. It also glosses over the evidence uncovered in discovery that Via Christi's lien was supported by a billing statement that included overcharges. A hospital is permitted to file a lien only for the "reasonable and necessary" charges for the "treat-

ment, care[,] and maintenance" of a patient during his or her hospitalization. K.S.A. 65-406(b). Overcharges and duplicate charges, of course, are neither reasonable nor necessary. Reed's interest in the timely availability of his entire settlement amount has been directly and negatively affected by Via Christi's filing and attempt to enforce a lien that exceeded the reasonable and necessary charges for Reed's care. Reed therefore qualifies as aggrieved under the KCPA, and Via Christi was not entitled to summary judgment on Reed's deceptive acts and unconscionability claims for Reed's failure to meet that requirement.

### Deceptive Acts and Practices

"Whether a deceptive act or practice has occurred under the [KCPA] is not a question of law for the court, but rather a question of fact for the jury to decide." *Manley v. Wichita Business College,* 237 Kan. 427, Syl. ¶ 2, 701 P.2d 893 (1985). It is susceptible to summary judgment in a defendant's favor only if unsupported by evidence. *Bomhoff v. Nelnet Loan Services, Inc.,* 279 Kan. 415, Syl. ¶ 4, 109 P.3d 1241 (2005); see *Stair v. Gaylord,* 232 Kan. 765, 775-76, 659 P.2d 178 (1983).

Reed, in his counterclaim prayer for injunctive relief, alleged that Via Christi engaged in deceptive charging and billing practices, failed to credit accounts for Medicaid payments, employed a deceptive "Admission Agreement," and deceptively misused the Kansas hospital lien statute. We see no greater specificity in his repeated counterclaim after the amended petition was filed, and we have no pretrial questionnaire filed by him or pretrial order filed by the court. We do know, however, that Via Christi never billed Reed directly. Thus, although we agree that Reed qualifies as aggrieved, that status is limited and linked to Via Christi's filing of the lien and its supporting bill and its pursuit of the lien's enforcement.

As mentioned above, the district judge did not address Reed's deceptive acts and practices claims at all but nevertheless granted judgment in favor of Via Christi on them. This was error. The Court of Appeals panel also erred by disposing of these claims on the basis that Reed could not qualify as aggrieved under the KCPA.

Remand for further proceedings will be necessary unless we can determine on appeal that Reed failed to put forth any evidence supporting his allegations of deceptive conduct. See *Bomhoff*, 279 Kan. 415, Syl. ¶ 4.

Neither party has briefed the statute's precise requirements for the evidence Reed must advance to repel Via Christi's summary judgment motion. But the statute's language and interpreting caselaw from our Court of Appeals and Judge Kathryn H. Vratil of the federal District Court for the District of Kansas give us useful guidance.

K.S.A. 50-626(b) sets forth examples of deceptive acts and practices, some of which require proof that the supplier made a representation the supplier knew or should have known was false and some of which require that the supplier engaged in willful conduct. K.S.A. 50-626(b)(1) gives a nonexclusive list of examples of actionable deceptive representations, including one "made knowingly or with reason to know that . . . [p]roperty or services have . . . uses, benefits or quantities that they do not have." K.S.A. 50-626(b)(1)(A). Certainly, an overcharge or duplicate charge—in essence, a demand for payment for a service the consumer did not receive—misrepresents the use, benefit, or quantity of that service. See *Ray v. Poncal/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 48, 913 P.2d 209 (1995). K.S.A. 50-626(b)(2) prohibits a supplier from engaging in "willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact." And K.S.A. 50-626(b)(3) prohibits a supplier from engaging in "willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." In short, the "knowingly or with reason to know" standard of K.S.A. 50-626(b)(1) is a more forgiving one from Reed's perspective, when compared with the willfulness standard of K.S.A. 50-626(b)(2) and (b)(3).

This difference is illustrated by comparing our Court of Appeals' *Kiley v. Petsmart, Inc.*, 32 Kan. App. 2d 228, Syl. ¶¶ 3-5, 80 P.3d 1179 (2003), *rev. denied* 277 Kan. 924 (2004), and Judge Vratil's decision in *Tufts v. Newmar Corp.*, 53 F. Supp. 2d 1171, 1177-80 (D. Kan. 1999).

In *Kiley*, the consumer's claim fell under K.S.A. 50-626(b)(1)(C). Because the defendant seller knew or should have known the product it sold to the consumer was used rather than new, the court reversed summary judgment in favor of the seller. 32 Kan. App. 2d at 234. In *Tufts*, on the other hand, Judge Vratil dealt with a consumer claim under K.S.A. 50-626(b)(1)(A), (b)(1)(D), (b)(2), and (b)(3). Because the consumer came forward with no proof of willful conduct by one of the defendants, summary judgment in favor of that defendant on the K.S.A. 50-626(b)(2) and (b)(3) claims was granted. 53 F. Supp. 2d at 1179. As she wrote:

"It is not sufficient to allege that [the supplier] willfully gave information that later proved to be false. To show willful conduct, [a consumer] must provide some indication that would allow a reasonable jury to conclude that [the supplier] had a designed purpose to do wrong, *i.e.*, that [the supplier] intended to give the information even though [the supplier] knew that it was false." 53 F. Supp. 2d at 1179.

Here, Reed's deceptive acts and practices claims rest on the overcharges and duplicate charges detected in the audit and on his allegation that Via Christi's bill supporting the lien amount used "purposely vague and deceptive descriptions calculated to preclude [Reed] from determin[ing] what, if anything, [Via Christi] actually supplied." It is not crystal clear which subsection or subsections of K.S.A. 50-626 his claims depend upon. If it is K.S.A. 50-626(b)(1), then he need only come forward with enough evidence to demonstrate the existence of a genuine issue of material fact on whether Via Christi knew or should have known that the bill filed in support of its lien contained overcharges and duplicate charges in violation of the KCPA. If Reed's claims fail under K.S.A. 50-626(b)(2) or (b)(3), then he needs to come forward with enough evidence to demonstrate the existence of a genuine issue of material fact on whether the overcharges, duplicate charges, or " vague and deceptive descriptions calculated to preclude [Reed] from determin[ing] what, if anything, [Via Christi] actually supplied" were willful misrepresentations by Via Christi.

At this stage of the case, we know that the billing statement Via Christi provided Reed in support of its lien proved to be inaccurate in some of its particulars. Although there is no direct evidence of

whether Via Christi knew or should have known of the inaccuracies when the lien was filed and pursued, there is at least circumstantial evidence that it knew or should have known of them; and it is sufficient to create a genuine issue of material fact preventing summary judgment under K.S.A. 50-626(b)(1).

To the extent that Reed's deceptive acts and practices claims rest upon K.S.A. 50-626(b)(2) or (b)(3), we have a different situation. Standing alone, the inaccuracies in the bill supporting the lien would be insufficient evidence of willful conduct for Reed to survive summary judgment. See *Tufts*, 53 F. Supp. 2d at 1179. But Reed has also advanced his auditor's report, which concluded that "[t]he Via Christi itemized bill, incorrect coding application, duplicate Chargemaster numbers, unintelligible medical record entries, and line item charges with generic and non-specific terminology conspire to create audit impenetrability." The report also noted that an audit of a bill like Reed's should take approximately 30 hours to complete; the audit of the Via Christi bill at issue here required more than 100 hours. Based on the inaccuracies in the bill and the auditor's report, a reasonable jury could conclude, paraphrasing Judge Vratil, that Via Christi *"intended* to give the [false billing] information even though [it] knew that it was false." This means there is a genuine issue of material fact on any K.S.A. 50-626(b)(2) and (b)(3) claims as well.

We hold that, regardless of whether Reed's KCPA deceptive acts and practices claims are deemed to arise under K.S.A. 50-626(b)(1), (b)(2), (b)(3), or some combination of those subsections, he has come forward with enough evidence to defeat summary judgment in favor of Via Christi. There is no question that the bill supporting the hospital's lien contained inaccuracies, and his auditor's report is enough to demonstrate the existence of a genuine issue of material fact on any theory that Via Christi engaged in billing practices so confusing as to be intentionally misleading. Reed's KCPA deceptive acts and practices claims must be remanded for further proceedings.

*Unconscionability*

The Court of Appeals panel affirmed the district court's grant of summary judgment in favor of Via Christi on Reed's unconscionable acts or practices claims; because, in its view, a hospital enforcing its lien cannot, as a matter of law, violate the KCPA's prohibition on unconscionable acts or practices under governing statutes with "built-in provisions that preclude the hospital's *satisfaction* of its lien from being unconscionable to the patient." (Emphasis added.) *Via Christi*, 45 Kan. App. 2d at 366. The panel accepted, as did the district judge, Via Christi's argument that the hospital had merely sought an equitable distribution under K.S.A. 65-406(c) of the settlement proceeds in order to satisfy the lien. Thus Via Christi could not be seeking an amount in violation of the KCPA or otherwise committing an unconscionable act, even if its bill contained overcharges or duplicate charges or was so unintelligible that it was bound to mislead. See 45 Kan. App. 2d at 365-67.

The panel explained:

"[T]he hospital must limit its charges to what's reasonable and necessary. K.S.A. 65-406(b). Then, the court may only enforce a lien greater than $5,000 in an amount that constitutes an equitable distribution of the settlement proceeds. K.S.A. 65-406(c). Reasonableness and equity both mean fair; unconscionable means extreme unfairness. Black's Law Dictionary 619, 1379, 1663 (9th ed. 2009). By virtue of these opposite definitions, a judge enforcing a reasonable and equitable remedy cannot create an inequitable or unconscionable outcome. Therefore, because Via Christi's lien must be limited to the reasonable and necessary charges that are an equitable distribution of the settlement proceeds, enforcing the lien cannot violate the KCPA's prohibition on unconscionable practices." 45 Kan. App. 2d at 366.

We reject the panel's rationale. Even if we espouse for the moment its faith in an infallible judiciary, the KCPA prohibits unconscionable *acts and practices*—not simply unconscionable *outcomes*. K.S.A. 50-627(b) specifically states that an unconscionable act or practice violates the KCPA "whether it occurs before, during or after a transaction." It is not difficult to imagine a scenario in which a hospital includes fraudulent entries in its billing statement in order to improve its bargaining position or engages in harassing

conduct in an attempt to settle a lien. In this case, we note that Via Christi's pretrial questionnaire made it clear that the hospital sought recovery of the entire $83,365.64, not merely an equitable distribution from the funds in the trust account. As Reed argued before the district court when Via Christi indicated a willingness to reduce the amount it was seeking "by the net overcharges for services as documented," even though a judge may eventually eliminate overcharges or duplicate charges in determining an equitable distribution of settlement proceeds that exceed $5,000, a hospital may already have engaged in an unconscionable act or practice actionable under the KCPA.

Having concluded that it is legally possible for a hospital in Via Christi's position to violate the KCPA's prohibition on unconscionable acts or practices by filing or pursuing enforcement of a lien, we turn to the further particulars of this case.

Our precedent dictates that whether an action is unconscionable under the KCPA is a legal question for the court and that our review is therefore unlimited. See, e.g., *State ex rel. Stovall v. ConfiMed.com*, 272 Kan. 1313, 1317, 38 P.3d 707 (2002). The determination of unconscionability, however, ultimately depends upon the facts in a given case, *State ex rel. Stovall v. DVM Enterprises, Inc.*, 275 Kan. 243, 249, 62 P.3d 653 (2003). And, to a great extent, the determination is left to the sound discretion of the trial court. 275 Kan. at 249. An unconscionable act or practice requires both supplier deception and unequal bargaining power. *ConfiMed.com*, 272 Kan. at 1323.

Without a pretrial order or even a pretrial questionnaire pinning down Reed's unconscionable acts and practices claims, we believe it to focus on the overcharges and duplicate charges contained in the bill supporting the lien amount. It also appears that Reed relies on what he believes to be routine employment of unreasonable and inflated pricing. As with Reed's deceptive acts and practices claims, Reed's unconscionable acts and practices claims come before us wholly as a function of Via Christi's filing and attempted enforcement of its lien, not because it billed Reed directly for its services.

K.S.A. 50-627(b) supplies an illustrative, nonexclusive list of circumstances that a court "shall consider" in determining whether an act or practice is unconscionable. Among them is K.S.A. 50-627(b)(2), applicable when the supplier "knew or had reason to know . . . (2) when the consumer transaction was entered into" that "the price charged the consumer grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers." Although Reed's counterclaims did not cite to this particular subsection of the statute, it appears to be the one under which he proceeds.

During the summary judgment proceedings in the district court, Reed contended generally that the prices Via Christi charged him for medical treatment and supplies greatly exceeded those charged other uninsured patients by emergency medical service providers such as ambulance companies. His allegations also included that Via Christi charged him $52.60 for a dose of morphine while the wholesale price to Via Christi was 58 cents. Reed also pointed to lactated ringers charged at $86.95 compared to a wholesale price of 91 cents, dextrose and sodium chloride IV solution charged at $86.90 compared to 87 cents, sodium chloride IV solution charged at $52.65 compared to 65 cents, injectable fentanyl charged at $52.25 compared to 21 cents, and other entries with a similar theme. Although we understand the shock value of these comparisons to service providers completely different from a hospital such as Via Christi and of comparisons between wholesale and retail prices, shock value is not the same thing as probative value, one of the essential components of relevance. See *State v. Bridges*, 297 Kan. 989, 999, 306 P.3d 244 (2013) (relevant evidence must be both material, probative; probative evidence requires logical connection between asserted facts and inferences evidence intended to establish). The comparison that matters under K.S.A. 50-627(b)(2) is the one between the "price charged the consumer" and the "price at which similar property or services were readily obtainable in similar transactions by similar consumers." And the first must greatly exceed the second to qualify under the example of a factor to be considered.

At least some of Via Christi's responsive arguments in the district court appeared to recognize the correct rubric under K.S.A. 50-627(b)(2). It asserted that its prices should be compared to those charged by other trauma centers, and it directed the district judge's attention to data complied by the Kansas Hospital Association favorably comparing Via Christi's average prices to those that the University of Kansas Medical Center and Wesley Medical Center would have charged a patient who arrived at their doors in Reed's condition. This price comparison came closer to that contemplated by the statute invoking "similar transactions."

In his summary judgment ruling, the district judge found the overcharges and presumably the duplicate charges to be "a common if not uniform occurrence" in hospital billing, and he held that "minor overcharges and undercharges found in the audit [of the hospital bill] do not rise to the level of unconscionability under the KCPA." The judge also said that problems with the United States healthcare industry were well-known givens, but he was reluctant to " 'rush[] in where angels fear to tread.' "

On the overcharges and duplicate charges, we are unpersuaded by the district judge's "everybody does it" rationale for ruling in Via Christi's favor. That inaccurate and therefore misleading billing may be common or even uniform is not dispositive; industry practice alone should not be a complete defense. *Cf. Ashby v. Farmers Ins. Co. of Oregon*, 565 F. Supp. 2d 1188, 1214-15 (D. Or. 2008) ("The defense that 'everyone did it' is not an acceptable ground [under Fair Credit Reporting Act] to absolve Defendants from liability in the absence of a reasonable justification for Defendants' conduct . . . .").

We also disagree with the district judge's cavalier dismissal of the significance of the overcharges and duplications identified in the audit as "minor" in the scheme of Reed's overall care and the lien amount. Although the amounts connected to these items may have made up a small percentage of Reed's total hospital bill, a hospital's failure to ensure the accuracy of its charges to a consumer is not necessarily a "minor" problem under the KCPA. It can be extremely difficult for a consumer to decipher and detect such inaccuracies, while, under the language of K.S.A. 50-627(b)(2), the

hospital may know or should have known that the price charged for a nonexistent item exceeds, perhaps grossly, "the price at which similar property or services were readily obtainable in similar transactions by similar consumers." The proper price for nonexistent property or services is zero.

We hold that a hospital may engage in unconscionable conduct prohibited by the Kansas Consumer Protection Act when (1) it files and pursues enforcement of a lien based upon a bill inaccurate because of overcharges or duplicate charges, and (2) the hospital has enjoyed superior bargaining power when compared to its patient. See *DVM Enterprises*, 275 Kan. at 251 (unconscionability requires " 'some element of deceptive bargaining conduct present as well as unequal bargaining power' "); *ConfiMed.com*, 272 Kan. at 1323 (same). Because the district judge and then the Court of Appeals erred in ruling as a matter of law that a hospital's filing and pursuit of a lien could never be unconscionable and did not further evaluate the evidence, we believe the prudent course is to remand to the district court for careful review of the evidence in the first instance under the correct legal standard. We are not confident in our ability to decide the existence of unconscionability as a matter of law for the first time on appeal when the record before us may not be as complete as it should be or may have been otherwise warped by the lower courts' premature embrace of the hospital's flawed legal argument that it could not violate the KCPA because it only sought an equitable distribution of Reed's settlement proceeds.

## Number of KCPA Claims

Because Reed has alleged hundreds of transactions violating the KCPA under both its deceptive acts and unconscionable acts provisions, and he is incorrect as a matter of law, we are also compelled to address the number of KCPA claims at issue in this case before it returns to the district court on remand.

As we took pains to point out when we began our discussion of each of the KCPA claims, and as the district judge evidently recognized, Via Christi never billed Reed directly for his hospital care. It merely filed a lien, supported by a single statement of charges

for services rendered during a single hospital stay, and pursued enforcement of the lien. The filing of the lien and its ensuing enforcement is one transaction between the hospital supplier and its consumer patient, not hundreds of discrete transactions as Reed has alleged. On remand, the district judge will have before him one claim for deceptive acts and practices under K.S.A. 50-626 and one claim for unconscionable acts and practices under K.S.A. 50-627, not hundreds of each.

*Remaining Issues Raised in Court of Appeals*

Reed raises four additional issues in his appellant brief that were not addressed by the Court of Appeals. We have discretion on whether we address these issues. See Supreme Court Rule 8.03(g)(1) (2013 Kan. Ct. R. Annot. 77) ("In civil cases, the Supreme Court may, but need not, consider other issues that were presented to the Court of Appeals and that the parties have preserved for review.").

Because we hold that the Via Christi's lien was ineffective, we need not reach any of these four issues and decline to do so. In addition, we note that Reed's estoppel issue was not preserved for appeal through argument in the district court; see *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011); and his briefing on the constitutionality of K.S.A. 65-406 was inadequate to prevent that issue from being abandoned. See Supreme Court Rule 6.02(a)(5) (2013 Kan. Ct. R. Annot. 39); *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

CONCLUSION

Via Christi's failure to strictly comply with the requirements of K.S.A. 65-407 rendered its lien ineffective and unenforceable against Reed. We reverse the Court of Appeals and the district court on this point. We remand to the district court for entry of judgment in favor of Reed on Via Christi's claim for equitable distribution of Reed's settlement proceeds.

Because Reed came forward with evidence demonstrating the existence of a genuine issue of material fact on whether Via Christi

knew or should have known that it misrepresented the amount it was owed for services rendered, we reverse summary judgment in favor of Via Christi on Reed's deceptive acts and practices claim under the KCPA and remand that claim to the district court for further proceedings.

We also reverse the Court of Appeals and the district court on Reed's KCPA claim that Via Christi violated the Act's prohibition on unconscionable acts or practices when it filed its lien and pursued its enforcement. We remand that claim to the district judge, who must evaluate the evidence and the legal merit of the claim under the correct rubric in the first instance.

The decision of the Court of Appeals is reversed. The judgment of the district court is reversed. This case is remanded to the district court for further proceedings consistent with this opinion.

MORITZ, J., not participating.